AUSTELL *vs.* SWANN *et al.*, executors.

1 Where a widow renounced the provisions of her husband's will, and elected to take dower, which was assigned to her, she could not require the annual taxes on the dower lands to be apportioned between her and those to whom the reversion belonged.

(a.) Permanent improvements placed on an estate by a life tenant, which remain at the termination of the estate, inure to the benefit of the reversioners or remaindermen, but they cannot be made to contribute thereto or to repairs, nor can they be set off against mesne profits, in ejectment by the reversioners to recover possession at the death of the life tenant.

2. The right to dower accrues upon the death of a husband leaving a widow, and carries with it the income which it yields from that date. Therefore, where a widow renounced the provisions made for her by the will of her late husband, and elected to take dower, which was accordingly assigned to her, she could recover the income derived from the property so assigned, from the death of her husband to the time when she entered on the estate.

(a.) The provisions of the statute allowing the widow three months from her husband's death to claim dower, and barring the right if not set up in seven years, do not defeat her right to arrearages for the withholding of her dower.

(b.) The judgment allowing dower is no bar to the proceeding for income from the date of the death of her husband, because that question could not be involved in the proceeding for dower.

(c.) That a widow must elect between the legacy bequeathed to her and dower does not destroy her claim for an account* for the income, and if she elect between dower and a provision in lieu thereof or a child's part of the realty in ignorance of the condition of the estate, she is not bound thereby, unless such election of dower would have the effect of prejudicing or disturbing rights acquired bona fide by third persons in consequence thereof.

(d.) This court is strongly inclined to the opinion that the relief afforded in cases of this description rests upon principles quite independent of the statute of Merton; and so far as the rights recognized by that statute are concerned, they were covered by our adopting statute.

(e.) Under the liberal system in this state, for every right it is declared there shall be a remedy; the distinctions between real, personal and mixed actions are abolished, and it is optional with a suitor to resort to a court of law or a court of equity to enforce an equitable cause of action.

(f.) The right of a widow to mesne profits and income derived from lands assigned as dower, between the death of the husband and the entry of the widow on the lands so assigned, is not taken away by the various statutory provisions giving a year's support to the family of the deceased husband. Dower is a permanent provision for the widow for life, and in which no other member of the family has any interest; while the year's support is a temporary provision for the benefit of the widow and children, or the children, if no widow.

JACKSON, C. J., concurred.

BLANDFORD, J., dissented.

February 7, 1885.

Husband and Wife. Dower. Tax. Estates. Reversions. Remainders. Mesne Profits. Year's Support. Before Judge STEWART. Fulton Superior Court. October Term, 1883.

Reported in the decision

HILLYER & BRO., for plaintiff in error, cited 2 Scrib. Dow, 737; 6 J. J. Marsh, 586; 7 Fla., 207; 1 Dana, 345; 8 Gill & J., 50; 27 Miss., 733; 1 Md. Ch. Dec., 143; 28

Miss., 212 ; 12 Gill & J., 388 ; 1 Bailey Eq., 63 ; 4 Kent, 70 ; 62 *Ga.*, 106; 35 Ala., 528; 9 Ves., 222; Dudley, 123; 2 Browns C. C., 620; 2 Ves. Jr., 122; 3 Dess., 482; 5 Johns Ch., 482; 50 *Ga.*, 192; Code, §§1763 *et seq.*, 1768, 2575; 58 *Ga.*, 247; 3 *Kelly*, 209; 14 Penn. St., 134; Cobb Dig., 489; Code, §3357; 59 *Ga.*, 165; Code, §3476; Dudley, 254; 4 *Ga.*, 558; 6 *Id.*, 495; 7 *Id.*, 211 ; 15 *Id.*, 270 ; 19 *Id.*, 413; 31 *Id.*, 668 ; 32 *Id.*, 63 ; 49 *Id.*, 412; 54 *Id.*, 575; 55 *Id.*, 354, 228 ; 56 *Id.*, 520; 1 Otto, 531; 4 *Id.*, 351, 400, 423, 477, 606, 644; Code, §§2897, 2898; 45 *Ga.*, 554; 1 P. Wms., 118, 122; 2 Scrib. Dow., 743, 717; 29 Ills., 323; Rev. Stats. Ohio, 522, §18; Missouri Stats., 1855, 676, §§34, 36; *Id.*, 1879, §2214; Kansas Laws 1862, 482, §§23, 25; Code, §4043; 2 Scrib. Dow., 71, 73 *et seq.*, 89; 1 Bailey S. C. Eq., 63; Const. 1877, Art. 7, Sec. 2; Code, §§5181, 5201, 873, 886, 881, 898; 10 *Ga.*, 327, 329; Code, §§3132, 3133; Cooley Const. Lim., top pp. 612, 613.

E. A. ANGIER; HOPKINS & GLENN, for defendants, cited Code, §§1763, 1768, 2571, 4041; 58 *Ga.*, 248; 17 *Id.*, 123; Code, §3979 (a); 10 Ohio, 23; Code, §§4048, 3357, 2255; 2 Scrib. Dow., 783; Burroughs, 223; Cobb's Dig., 1041; Marb. & Crawf. Dig., 447, 554; Acts 1851–2, p. 288, secs. 9, 10, 11; Acts 1854, p. 109; Code, §804; Acts 1882–3, p. 39, sec. 14.

HALL, Justice.

The plaintiff renounced the provision made for her by the will of her late husband, and elected to take dower in the real estate of which he died seized and possessed. Dower was assigned to her both in city houses and lots, and in lands situated in the country. No provision was made, however, to compensate her for the income derived from the property assigned her as dower, from the death of the testator to the time when she entered on the estate. The present suit is brought to recover this income, and

Austell *vs.* Swann *et al.*, executors.

also to apportion between her and the tenants in remainder the annual assessment of *ad valorem* tax made upon the dower lands since she has been in possession of the same. The defendants demurred to this suit, and the demurrer being sustained, she brings this writ of error to reverse that judgment. It will be seen that two questions are raised by the demurrer.

1. We are of opinion that the apportionment of the annual taxes paid by her upon the dower land between her and those to whom the reversion belongs, cannot be allowed upon any principle either of law or equity, and that to this extent there was no error in sustaining the demurrer. It is conceded in argument, if this tax were specific, or if it were an income tax, she would be bound for its payment, and we can perceive no difference in this respect between that and an *ad valorem* tax. The difference, abstractly considered, consists only in the mode of assessment. In neither case is this assessment made for a longer period than a year; it is not assessed upon the reversion, but upon the value of the estate at the time, and which may fluctuate yearly during the plaintiff's term. As she, by the express provision of the Code, §2255, is entitled to the full use and enjoyment of the property during her life, it is insisted that, by the same law, she can only enjoy its income, and control it to the exclusion of others, provided that in its use she exercises the "ordinary care" that "a prudent" person should exercise for "its preservation and protection," and "commits no acts" that may tend "to the permanent injury of those entitled to the remainder or reversion;" that if she is wanting in "such care, and wilfully commits such acts," she thereby forfeits her interest to the remaindermen or reversioners, who, if they so elect, may claim "immediate possession." It is contended, as we think, with irresistible force, that a neglect to pay the burdens imposed by law upon the property during the term would be a want of such ordinary care as a prudent person should exercise for its protection and preser-

vation, and would tend to divest the title to the fee by exposing it, or a portion of it, to sale, to raise the taxes levied on it. The reversioners are not bound to keep it in repair during the term of the life tenant, nor can they be made to contribute to such repairs, or even to permanent improvements, that she may see proper to place upon it for its better enjoyment. Such of these latter as remain at the termination of her estate inure to the benefit of the reversioners, and in ejectment by them to recover possession at her death, the value of such improvements could not be set off against mesne profits. *Dean, ex'r, vs. Feely,* 69 *Ga.,* 815, 817

2. The next question raised is one, so far as our own researches go, aided by those of the eminent counsel who so forcibly and exhaustively argued the case for both parties, that has never been directly passed on by this court, or its predecessor, the convention of judges of the superior court. In a case that came before the convention of judges in 1832, *Wakeman and wife vs. Roach, Dudley's R.,* 123, it was collaterally involved, and it was there said " that in equity upon a bill filed for an assignment of dower and an account of the arrears, it is declared by numerous decisions that there is no limitation, either in equity or at law, without some special ground, and the account is uniformly carried back to the death of the husband, without regard to time, notwithstanding the general rule of a court of equity is to adopt a period in analogy to the statute of limitations." Again, it is said, " If the remedy by which the right to an assignment of dower is attempted to be enforced be considered as partaking of the nature of a real action, as in the writ of right of dower, the Statute of 32 Henry VIII. cannot apply to such remedy, because it does not extend to cases where the demandant does not count upon the seisin of himself or his ancestor, and for the same reason, it would be inapplicable to any possessory real action brought for an assignment of dower. If the remedy be of the class of possessory actions, it is not

embraced in the Statute of (Limitations) 21 Jac. I., c. 16, because, until assignment, the dowress has no right of entry. A dowress is considered, in regard to her title, as being in possession of lands assigned to her by her husband. Her estate is a continuation of her husband's; and upon the assignment of her dower, in legal contemplation, she is in from the death of her husband." Why the right recognized in this case has not been litigated in our courts, it may not be easy to explain. It may have lain dormant because it was overlooked, or perhaps, when demanded, it may have been conceded without a contest, or it may have been refused, and the party making the demand was apprehensive that it was doubtful, and did not care to incur the expense of settling the doubt. The bare absence of cases upon the question, therefore, affords none but equivocal evidence of the contemporaneous construction of legislation supposed to have an adverse bearing upon the right here claimed.

We cannot agree with the learned counsel, who argued this case with so much learning and such signal ingenuity for the defendants in error, that the right to these arrears of rent has its foundation in the Statute of Merton, 20 Henry III., c. 1, and applies only to an heir, who, instead of assigning it, deforced the widow of her dower, and that, if that statute ever had operation in this state, it has ceased to have effect since the passage of the act allowing the widow, after the lapse of three months from her husband's death, to resort to the courts to obtain her dower, and barring the right if she did not set it up in seven years, nor do we concede the position that the year's support given by our statute to the family of the husband is to be regarded as a substitute for the allowance of arrearages to the widow for withholding her dower, to which, according to some of the authorities, she had a right to look as a means of subsistence. Nor do we think that the plaintiff was barred from setting up this claim by the judgment in her favor on her petition for dower. This petition neither

did nor could, under our law, set forth that claim. The commissioners appointed under the act of 1839, upon this petition, are authorized " to enter upon the lands and tenements of which the husband died seized, and to lay off, admeasure and assign to the widow the dower to which she is entitled therein, having regard to the shape and valuation of the same." To enable them to execute the commission, they are empowered to employ a competent surveyor, who is required to make a careful plat of the survey of the dower; and this plat is to be returned to the court with their report and recorded therewith. Code, §§4041, 4045. This return, by the acts of 1862 and 1863, Code, §4048, when made the final judgment of the court, is conclusive between the parties interested. A writ of possession is to issue in favor of the applicant, and the judgment includes the cost of the proceeding against the representatives of the deceased husband. In such a real action as a writ of dower, or a writ of right of dower, neither damages for detention nor a claim for mesne profits can be set up, unless given by statute. In ejectment and its statutory substitute to try title to land, there could be no demand for mesne profits until the right was expressly given by the act of the general assembly. Cobb's Dig., 489; Code, §3357. Judgments are conclusive, however, only as to the " subject-matter in issue " in the suit wherein they are rendered. Code, §§2897, 3577, 3826. So far is this principle carried that parol evidence may be admitted " to show that a matter apparently covered by the judgment was really not passed upon by the court." *Ib.* §2889.

In the case of Woodward *vs.* Woodward, 2 Richardson's Eq. R., 28, the court of appeals in equity of South Carolina, speaking directly to this point, said : " It is insisted in argument that the complainant's right to interest or mesne profits is concluded by the commissioners having assessed a gross sum in lieu of dower. But the writ for the admeasurement of dower conferred on them no authority to take an account of mesne profits, or to commute them for

money, nor has the court any warrant in law to delegate such a power to them ; and upon referring to the return, it will be seen they do not assume it." . . . . . . " It has been insisted, too, that the complainant, having been put to her election, is not entitled to mesne profits until she had elected and demanded her dower, and such seems to have been the rule at common law. 1 Roper's Hus. and Wife, 444 ; Co. Lit., 32 (*b*), and Mr. Roper, in his treatise on the Rights of Husband and Wife, vol. 1, p. 453, refers to Delver *vs.* Hunter, Bunb. 57, where the same rule was applied in chancery. But he questions, upon high authority, the authority of the book itself, and controverts, in his usual felicitous manner, and I think successfully, the doctrine of the case, and maintains that courts of equity, in decreeing an account for mesne profits, proceed without reference to any statute or rule of the common law, but upon the principle that the right of the widow to have her dower assigned to her immediately after the death of her husband draws after it the right to an account of the profits ; that, in effect, the tenant in possession, by the receipt of the profits, incurs a debt which in equity he ought to pay ; and he further remarks that, in equity, the tenant may be regarded as her bailiff, and is therefore answerable for her share of the profits. The circumstance that the complainant was driven to elect between the legacy bequeathed to her and her right of dower, so far from detracting from the merits of her claim for an account, adds additional force to it. It was a difficulty thrown in her way without any agency of her own, and she was not bound to elect until it was removed by a discovery of the quantity and value of the real estate of which the testator died seized." The other chancellors concurring with Chancellor Johnson, who delivered this opinion, the executor was decreed to account for the rents and profits of the real estate of the testator, in which dower had been assessed for the widow, from the time of testator's death to the time the commissioners' return was confirmed, and that he pay her interest

on the sum assessed from that time until the money was paid.

This case, in its leading features, is almost identical with that under consideration, and it is based upon principles most of which have found their way into our Code. Thus, in the matter of election between dower and a provision in lieu thereof, or a child's part of the realty, if she makes it in ignorance of the condition of the estate, she is not bound thereby, unless such election of dower would have the effect of disturbing or prejudicing rights acquired *bona fide* by third person in consequence thereof. The Code, §§1765, 1766, lays down quite as liberal a rule as that announced by the chancellor in the conclusion of this able and satisfactory opinion. We are strongly inclined to the opinion that the relief afforded in cases of this description rests upon principles quite independent of the provisions of the statute of Merton, and from the best sources of information at our command, we feel safe in assuming that, so far as the rights recognized by that statute are concerned, they were covered by our adopting statute; the statute itself is found in Schley's Dig. (p. 78), which was an authorized compilation of the English statutes of force in this state, by a very competent and able lawyer. The right recognized by its provisions is of too much importance to be denied a place in our laws, unless we were well assured that it had been repealed by subsequent legislation. No doubtful implication, or mere change or substitution of other remedies than those thereby contemplated, should have that effect. In announcing these views, we are not without the support of many eminent jurists and authors, both in our sister states and in England. From the great number at command, and which will be found admirably collated in the exhaustive brief of Judge Hillyer, who appeared as counsel for the plaintiff, we select a single case, Keith *vs.* Trapier, 1 Bailey's Eq. R., 68. Speaking of the statute of Merton, Chancellor Harper, whose opinion was afterwards concurred in by the full bench of the court

of appeals of South Carolina, said: "As the jurisdiction has been exercised only since the passing of the statute, it is perhaps not perfectly clear whether the account has been allowed in conformity to the statute or on distinct equity principles. This statute being in existence, there was no need to explain this matter in the decided cases; but on referring to the cases, I am sufficiently satisfied that the account for rents and profits has been allowed on distinct equity principles, entirely independent of the statute.

"Courts of equity give an account of rents and profits in dower when no damages could be recovered at law under the statute. In the case of Dormer vs. Fortescue, 3 Atkyns, 130, Lord Hardwicke observes that the court will give the dowress profits from the time, not only of her demanding, which is the time from which she is to have it in her writ of dower, but will give it to her from the time of her title accrued, although the statute gives her damages only from the time of her demand. Lord Coke also says, 1 Inst., 32 (b), 'if the wife hath not requested her dower, she shall lose the mean values and her damages.' But 'it must be supposed that the dowress has nothing to live upon but her dower, and the mesne profits are her subsistence from the time of her husband's death, and the course of this court seemed, therefore, to have been to assign her dower, and universally to give her an account from the death of her husband.' By the Master of the Rolls, in Curtis vs. Curtis, 2 Bro. C. R., 632. In Banks vs. Sutton, 2 P. Wms., 719, which may be authority as to this point, the decree was for 'the arrears of dower from the death of her husband, she allowing the third of the interest of the mortgage money unsatisfied at that time, and her dower to be set out, if the parties differ.' See also Oliver vs. Richardson, 9 Va., 222. In cases where the deforciant is dead before the right of dower is established, so that the widow's right to an action for damages under the statute is gone at law, the court will give arrears of rents and profits. That was the case of

Curtis *vs.* Curtis, 2 Bro. C. C., 620.   So, if the widow
should die before she had established her right to dower,
equity will decree an account in favor of her personal
representatives. 1 Fonbl., 22.

"The decreeing an account for arrears in dower seems
to rest on the same grounds precisely as the decreeing an
account for the rents and profits of real estate.  The prac-
tice of the court to give an account of rents and profits
does not depend on any statute, but on general principles
of equity.   Lord Hardwicke puts them both on the same
footing in Dormer *vs.* Fortescue.   He thinks there must
be some ground of equity to give the court jurisdiction—
as trust or infancy, in cases of real estate, or an out-
standing term, or discovery in cases of dower; but having
jurisdiction, the court will give complete relief by decree-
ing an account, in general, from the time the title accrued,
although, under special circumstances, the court may re-
strain it.   Perhaps it would be more correct to speak of
these things as identical, rather than resembling.   In
dower the widow recovers real estate, and in both cases
the court proceeds on the principle that one party has
received what the other was entitled to.   The reason why
damages were not recoverable in dower, previous to this
statute of Merton, as explained in Curtis *vs.* Curtis, 2 Bro.
C. C., 630, was that damages were not recoverable in any
real action.   The writ of dower and the writ of right of
dower were real actions.   There is no doubt that the
widow was, at law, entitled to the land, that is, to the use,
possession, or rents or profits, from the death of her hus-
band.   *Magna Charta* expressly provided that dower shall
be assigned within forty days, although, as Lord Coke
says, that act was of little effect, for that no penalty was
thereby provided, if it were not done.   Co. Lit., 32 (b).
The right at law was perfect but for the technical reason
mentioned.   It is, however, the peculiar office of equity
to afford relief, when the law gives a right, but the rigor
of legal forms affords no remedy or an inadequate reme-

dy. I cannot doubt that, independently of the statute of Merton referred to, a court of equity will give an account for the arrears of rents and profits in dower."

In delivering the opinion of the court of appeals confirming this decree, Colcock, J., maintains, upon authority, that the statute of Merton gave the widow nothing to which she was not entitled before its enactment, except a legal remedy to recover damages, as distinguished from mesne profits, which were the fruits of her title to the land, and to which she was as much entitled as to the land itself. "The court," he says, "has never restricted the account for rents and profits to cases within the statute of Merton, and its jurisdiction, therefore, cannot be supported on that statute; but stands, and can stand only, on its acknowledged competency to afford a remedy, where the law gives a right, but no remedy, or an imperfect one."

Our Code enlarges this principle, and applies it to all courts, by declaring in the broadest terms: "For every right there shall be a remedy, and every court having jurisdiction of the one may, if necessary, frame the other." §3250. It proclaims that an action is merely the judicial means of enforcing a right. *Ib.*, §3251. It abolishes all distinctions between actions real, personal and mixed, and recognizes no others than such as are against the person or property, and permits these to be united. *Ib.*, §3252. For every violation of a contract, express or implied, for every injury done by another to person or property, it gives a right to recover and a remedy to enforce it. *Ib.*, §2243. In its disregard of forms, and in its anxiety to attain the ends of substantial justice, it leaves it optional with the suitor to resort either to a court of law or a court of equity to enforce a purely equitable cause of action, and at law the jury are to find a verdict, and the judgment to be rendered thereon is to be so moulded and framed as to give equitable relief, as verdicts and decrees are rendered and framed in equity proceedings. Code, §3082.

The only point that now remains for consideration is, whether the right to mesne profits and income derived from lands assigned as dower, between the death of the husband and the entry of the widow on the lands so assigned, is taken away by the various statutory provisions giving a year's support to the family of the deceased husband. The right to dower accrues upon the death of the husband, and carries with it the income which it yields from that date. The widow is entitled, as dower, " to an estate for life in one-third of the lands, according to valuation, including the dwelling house (which is not to be valued unless in a town or city) of which the husband was seized and possessed at the time of his death." Code, §1763. In this estate no other member of the family has any interest whatever. The year's support provided for the family of the deceased husband, we cannot think, was ever intended to diminish this interest. The right of the widow is distinct and separate from the provision allowed by law for the support of the family. In the first case, the amount of property assigned is ascertained by a fixed and definite rule; in the last, it depends upon a variety of circum-stances, and, to some extent, upon the discretion of those appointed to set it apart; one is a permanent provision for the widow, eo nomine; the other, from its very nature, is temporary, and is designed to meet an emergency. If the necessity continues longer than the year, other provision is made to avert its consequences from the family. The title to the property set apart for a year's support vests in the widow and children, or if no widow, in the children, share and share alike, and where there are two sets of minor children by different wives, the portions going to each must be specified, and the title to that allotted to the children of a deceased wife vests in them. This allowance is of the highest dignity, and is preferred by express en-actments before all other debts. If the estate will reach that amount, it cannot be less than one hundred dollars, and if it appears, upon a just appraisement, that the es-

tate is less than five hundred dollars, the whole of it is required to be set apart for the support of the family. Code, §§2571, 2572, 2574, 2576. The distinction here pointed out is recognized in a similar case determined by this court. *Calhoun vs. Calhoun*, 58 *Ga.*, 247. It is gratifying to find how exactly the well-settled principles of law coincide with an enlightened public policy that recognizes natural justice and the claims of humanity, encouraging children to strive for the reward vouchsafed to those who honor their fathers and mothers.

The plaintiff, on this ground, set out a good cause of action, and there was error, as to that, in sustaining the demurrer to her declaration

Judgment reversed.

ᴖACKSON, Chief Justice, concurred, but furnished no written opinion.

BLANDFORD, Justice, dissented, but furnished no written opinion.