## THE BLOOD BALM COMPANY v. COOPER.

1. Where one prepares a proprietary or patent medicine and puts it upon the market and recommends it to the world as useful for the cure of certain diseases, the bottle containing it having therewith a prescription made by the proprietor of the medicine, in which he states that it is to be taken in certain quantities, and the medicine with this prescription is sold by the proprietor to a druggist for the purpose of being resold to persons who might wish to use it, and the druggist sells the same to a person who uses it in the quantity thus prescribed, and the same contains an ingredient such as iodide of potash in such quantity as proves harmful to the person thus using it, the proprietor is liable.

(a) The medicine having been put upon the market by the proprietor, not alone for the use of druggists, but to be used by the public in general who might need it for the cure of the diseases for which the proprietor set forth in the label that it was adapted, it was the same as if the proprietor himself had sold the medicine to the person who was injured by its use, with instructions and directions as to how the same should be taken.

(b) A medicine known to the public as dangerous and poisonous if taken in large quantities may be sold by the proprietor to druggists and others, and if any person, without more, should purchase and take the same so as to cause injury to himself, the proprietor would not be liable.

2. There was sufficient evidence as to whether or not the medicine was prepared by the defendant, tending to show that it was so prepared and that the iodide of potash was put therein by the defendant or its agents, to send the case to the jury, and it was not error to refuse a nonsuit.

3. Where the charge of the court is full and fair upon every aspect of the case, the court need not charge further, though requested to do so by either party.

4. There was no error committed as to the admission and rejection of testimony.

October 14, 1889.

Torts. Proprietary medicines. Poisons. Nonsuit. Charge of court. Evidence. Before Judge VAN EPPS. City court of Atlanta. March term, 1889.

Cooper sued the Blood Balm Company, alleging that it had sold or caused to be sold to him a medicine called " B. B. B.", which it manufactured and placed on the market and strongly recommended to be taken as a blood purifier, and caused him, by reason of such recommendations and representations, to take the medicine internally, which he did, according to directions, for the purpose of relieving a slight breaking out on the skin of one of his lower limbs. He took two bottles without any apparent injurious effect, but without entire relief, and purchased and commenced taking a third bottle in accordance with directions. The first dose he took out of that bottle made him sick, but he followed the directions strictly, and by the time half of the bottle was consumed, his head, neck and breast were covered with red spots and the inside of his mouth and throat filled with sores, so that he became alarmed, stopped taking the medicine, and commenced taking lemon juice in accordance with the directions, but it did no good; his mouth grew worse, and a large part of the hair fell from his head. As the result thereof, he suffered for five months great bodily pain and distress and was unable to take any solid food, and still so suffers though somewhat improved. The medicine was inju-

rious and hurtful to him because unskillfully compounded, containing an excessive amount of iodide of potash, beyond what was safe to be given him. In following the directions, he took over sixty grains of that drug daily. He is a mechanic by trade, and earned from three to five dollars per day, but was totally disabled for five months, and was compelled to expend $200 for doctors' bills and medicines, etc.

The defendant pleaded not guilty. Under the evidence and the charge of court, the jury found for plaintiff $1,000; and upon denial of a new trial, the defendant excepted. The grounds of the motion therefor as to testimony, referred to in the fourth head of the opinion, were upon the admission of the printed circular, shown to have accompanied the bottle of medicine bought by plaintiff, and containing directions for its use, without proof that the wrapping of the bottle with this circular was the act of the defendant; in permitting the plaintiff to testify that in a conversation he had before bringing this suit, with a physician who was defendant's agent, this physician said nothing about the medicine not being that of defendant; in permitting a medical witness for defendant to be asked, on cross-examination, whether he would consider sixty or seventy grains of iodide of potash given in a day an imprudent dose; in ruling out testimony of a druggist and physician who had sold large quantities of the medicine in question, and of other witnesses for the defendant, that they had never heard of any one being injured by its use; and in refusing to permit a physician to testify that persons affected with syphilis will commonly deny that they ever had it, and that physicians expect such denial.

HILLYER & BROTHER, for plaintiff in error.

HALL & HAMMOND, contra.

BLANDFORD, Justice.

The main question in this case arises upon the re-

fusal of the court below to award a nonsuit, and the solution of this question depends upon whether, where one prepares what is known as a proprietary or patent medicine, and puts it upon the market and recommends it to the world as useful for the cure of certain diseases, the bottle containing it having therewith a prescription made by the proprietor of the medicine, in which he states that it is to be taken in certain quantities, and such medicine, accompanied with this prescription, is sold by the proprietor to a druggist for the purpose of being resold to persons who might wish to use it, and the druggist sells the same to a person who uses it in the quantity thus prescribed, and it being shown that the same contains a certain article known as the iodide of potash in such quantity as proves harmful to the person thus using, the proprietor is liable. The plaintiff in error insists that there is no liability on the part of the proprietor, (1) because it was not sold by the proprietor to the person injured, but by a druggist who had purchased the same from the proprietor; and several cases are cited to sustain this position; (2) because the drug thus sold was not imminently hurtful or poisonous.

1. We are not aware of any decision of this court upon this question, indeed there is none; and we have searched carefully, not only the authorities cited by counsel in this case, but others, and we find no question like the one which arises in this record, determined by any court. In the case of Thomas v. Winchester, 6 N. Y. (2 Seld.) 397, 57 Am. Dec. 455, 1 Thompson Neg. 224, referred to by counsel in this case, the question decided was, that a dealer in drugs and medicines who carelessly labels a deadly poison as a harmless medicine, and sends it so labelled into market, is liable to all persons who, without fault on their part, are injured by using it as such medicine in consequence of

the false label. This comes nearer the present case than any we have been able to find, and it is relied upon by both parties as an authority; and in the notes thereto by Mr. Freeman in the American Decisions, the cases relied upon by counsel in this case are embraced and referred to, and to some extent considered. It is not denied by counsel in this case that the doctrine of the case cited (Thomas v. Winchester) is sound and correct law, but the present case differs from that case, and mainly in this: there the drug sold was a deadly poison, and the wrong consisted in putting a label upon the same, which indicated that it was a harmless medicine; whereas in this case the medicine sold was not a deadly poison, and no label was put upon it which was calculated to deceive any one in this respect. But accompanying this medicine was a prescription of the proprietor stating the quantity to be taken, and the evidence tended to show that the quantity thus prescribed contained iodide of potash to such an extent as, when taken by the plaintiff, produced the injury and damage complained of. The liability of the plaintiff in error to the person injured arises, not by contract, but for a wrong committed by the proprietor in the prescription and direction as to the dose that should be taken.

We can see no difference whether the medicine was directly sold to the defendant in error by the proprietor, or by an intermediate party to whom the proprietors had sold it in the first instance for the purpose of being sold again. It was put upon the market by the proprietor, not alone for the use of druggists to whom they might sell it, but to be used by the public in general who might need the same for the cure of certain diseases for which the proprietor set forth in his label the same was adapted. This was the same thing as if the proprietor himself had sold this medicine to the defendant

in error, with his instructions and directions as to how the same should be taken. In all the cases cited by the plaintiff in error, there is no case in which the proprietor prescribed the doses and quantities to be taken of the medicine sold by him. If this medicine contained the iodide of potassium in sufficient quantity to produce the injurious consequences complained of to the defendant in error, and if the same was administered to him, either by himself or any other person, as prescribed in the label accompanying the medicine, he could, in our judgment, recover for any injury he may have sustained on account of the poisonous effect thereof. . It was a wrong on the part of the proprietor to extend to the public generally an invitation to take the medicine in quanities sufficient to injure and damage persons who might take it.

A medicine which is known to the public as being dangerous and poisonous if taken in large quanities, may be sold by the proprietor to druggists and others, and if any person, without more, should purchase and take the same so as to cause injury to himself, the proprietor would not be liable. But if the contents of a medicine are concealed from the public generally, and the medicine is prepared by one who knows its contents, and he sells the same, recommending it for certain diseases and prescribing the mode in which it shall be taken, and injury is thereby sustained by the person taking the same, the proprietor would be liable for the damage thus sustained. These proprietary or patent medicines are secret, or intended by the proprietors to be secret, as to their contents. They expect to derive a profit from such secrecy. They are therefore liable for all injuries sustained by any one who takes their medicine in such quantities as may be prescribed by them. There is no way for a person who uses the medicine to ascertain what its contents are, ordinarily, and in this

case the contents were only ascertained after an analysis made by a chemist—which would be very inconvient and expensive to the public; nor would it be the duty of a person using the medicine to ascertain what poisonous drugs it may contain. He has a right to rely upon the statement and recommendation of the proprietor, printed and published to the world; and if, thus relying, he takes the medicine and is injured on account of some concealed drug of which he is unaware, the proprietor is not free from fault, and is liable for the injury thereby sustained. It appears from the analysis made by the chemist in this case, that this medicine contained 25 grains of the iodide of potash to two tablespoonfuls of the medicine. The testimony of the plaintiff, by witnesses learned in the profession of medicine, was that iodide of potash in this quantity would produce the effects upon a person using it shown by the condition of the defendant in error. The prescription accompanying the bottle directed the taking of one to two tablespoonfuls of the medicine, and this was done by the defendant in error, and he was thereby greatly injured and damaged.

This is not like the case of a dangerous machine or a gun sold to a person and by him given or sold to another, as in some of the cases referred to. Mr. Freeman, in his notes to the case above referred to (Thomas v. Winchester), alludes to all those cases; and Mr. Thompson, in his work on Negligence, refers to the same cases, and they are there fully discussed.

2. The plaintiff in error further insists that a nonsuit should have been awarded in this case because the evidence does not show that the medicine was prepared by the defendant. There was evidence in the record calculated to show that it was so prepared by the defendant (the plaintiff in error here) or its agents, and also that the iodide of potash was put therein by the

defendant or its servants or agents. There was sufficient evidence as to this fact to send the case to the jury for them to find what was the truth. So we think upon the whole, the law being as we have stated it to be, that there was no error on the part of the court in refusing to grant the nonsuit.

3. There are many other grounds of error alleged in the motion for a new trial, as to certain charges of the court and refusals to charge, but looking to the charge of the court as sent up and made a part of the record, we think it was a full and fair charge upon every aspect of the case, stating the law as we understand it; and as we have frequently determined, where such is the case, the court need not charge further, even though requested to do so by either party to the case.

4. There are also some assignments of error as to the admission and rejection of testimony, but we have looked into them, and are satisfied there was no error committed by the court in ruling as he did. Under the view we take of the case, it is unnecessary to notice further and in detail the assignments of error.

*Judgment affirmed.*