### 465. LEWIS *v.* AMOROUS *et al.*

1. A principal or master being responsible for the negligent acts of his agent or servant only when done by command or within the scope of the employment, it is necessary, in an action seeking to charge one for the acts of another upon the theory that the latter was agent for the former, that the petition should disclose, either expressly or by necessary implication, not only the existence of the agency, but also the connection of the act with the employment.

2. Where the owner or person in possession of an automobile merely permits another to use it, the latter does not thereby become the agent or servant of the former so as to charge the one with the other's negligence.

3. The owner, or keeper, of an automobile will not be held liable for a negligent homicide committed therewith in a public street by a person old enough to be discreet and responsible in the eyes of the law, who took the machine, without the knowledge of the former, from a shop or garage where it had been left, although the person who thus took

and drove the machine was inexperienced in its operation and un-licensed to run it, notwithstanding the leaving of the automobile at the shop or garage furnished the opportunity whereby such person got possession of it.

Action for damages, from city court of Atlanta—Judge Reid. April 2, 1907.

Argued October 24,—Decided November 25, 1907.

*Burton Smith,* for plaintiff.

*A. A. & E. L. Meyer, Rosser & Brandon, Ellis, Wimbish & Ellis, Frampton S. Ellis, Reuben R. Arnold,* for defendants.

POWELL, J.   For the homicide of her minor son Mrs. Lewis brought an action against Martin F. Amorous, John F. Toole, and Edward H. Inman.   The petition contained four counts.   The first count is as follows:   Defendants, on the 25th day of September, 1905, kept an automobile on North Pryor street in the city of Atlanta.   It had been kept there for some time.   Said automobile was kept there by all the defendants.   On the day aforesaid, defendants permitted one Percy Pybus to take and run said automobile.   Said Pybus was, by said act, created the agent for each and all of said defendants.   For his negligent conduct in running said automobile they are jointly and severally liable.   All of the negligence herein set forth was the concurrent negligence of each of the said defendants.   On the day hereinbefore named, in the city of Atlanta, Fulton county, petitioner's son, Branch Lewis Jr., was run down and killed as hereinafter set forth.   Petitioner's son was on Washington street, near the corner of Clark street, at about 7 p. m. on said date.   A number of children were skating and playing in the streets and on the sidewalks at said place.   Said automobile, being then and there run by said Pybus, agent as aforesaid, dashed down Washington street at a dangerous and reckless rate of speed, without any warning or notice of any sort, into the midst of the children.   Petitioner's son and the other children were in plain view of said Pybus for a great distance, and the least ordinary care would have given him notice of the children's presence in the street and the danger of running the automobile at such a reckless rate of speed into their midst. Petitioner's son was, just prior to his death, standing on the sidewalk on Washington street, watching the other children skate. He started across the street, and, as he was standing or walking

in the street, he was struck by said automobile and killed. Defendants' agent negligently failed to blow his horn after he passed Rawson street. Defendants' agent negligently ran said automobile at an unsafe and improper rate of speed. He negligently failed to check the machine and avoid striking deceased. Defendants' agent negligently ran into the crowd of children, without any warning of any sort. Defendants' agent negligently ran the automobile against petitioner's son and killed him. The second count contained the following allegations: Defendant Amorous owned an automobile and kept it at an establishment run by defendants Inman and Toole. Said establishment is in the city of Atlanta, on North Pryor street, and is run for the purpose of selling, handling, renting, and repairing automobiles. Defendants negligently permitted the young son of defendant Amorous, Clinton Amorous by name, to control and use said machine and act as agent for them. Said Clinton Amorous, within the scope of his authority, turned said machine over to one Pybus. Said Clinton Amorous permitted him to operate and run the same. Said Clinton Amorous constituted said Pybus agent for all the defendants. For his negligent conduct in running said automobile they are jointly and severally liable. All of the negligence herein set forth was the concurrent negligence of each of the defendants.—This is followed by allegations as to injury and loss, just as in the first count. The third contains the following allegations: On the 25th day of September defendants were keeping a certain automobile at a shop or place of business on North Pryor street, in the city of Atlanta. Said automobile was a large and heavy machine, capable of going at a great rate of speed. It was complicated and difficult as to its management and construction. Said automobile was intended to be run in the public streets of the city of Atlanta. It was a machine which was dangerous and unsafe to entrust to any one, unless that person was capable of not only understanding its mechanical appliances, but also possessed of age and experience which it takes to operate the same. Defendants negligently so kept said automobile as that one Pybus, an inexperienced youth of 19 years of age, was given an opportunity to operate said machine and run the same about the streets of Atlanta and use the same on pleasure jaunts. Said Pybus was young and inexperienced, and without discretion necessary to run said

machine in the City of Atlanta. Said Pybus had no license au-
thorizing him to run said machine, and the running of the same
was a violation of a valid municipal ordinance of the City of At-
lanta. To permit such a machine to be run by him was negli-
gence on the part of the defendants. For his negligent conduct
in running said automobile they are jointly and severally liable.
All of the negligence herein set forth was the concurrent negli-
gence of each of the defendants.—This is followed by allegations
as to injury and loss, just as in the first count. The fourth count
varied from the third only in that it was alleged that the automo-
bile was registered and licensed, under a valid ordinance, in the
name of Clinton Amorous, and that it was negligence to allow any
one other than Clinton Amorous to run it.

The defendants each demurred generally and specially. The
court sustained the demurrers and dismissed the action.

1, 2. The theory of the first count is that the defendants, as
principals, through Pybus, as agent, committed the tort. If the
allegation had been the simple, direct statement that the defend-
ants, by their agent Pybus, committed the wrong, this, as against
demurrer, either general or special, would have been sufficient.
*Gilmer* v. *Allen,* 9 *Ga.* 208. However, the plaintiff, by stating
his action with greater particularity, has disclosed (what, in the
event of his having used the other form of pleading, would not
have been developed until he presented his evidence) the fact that
no such agency existed as would make the alleged principal re-
sponsible for the act of the agent. The practice of pleading facts
relied upon, with particularity, is commendable; for it is better
for plaintiff, for defendant, and for the court that the case should
be ended by demurrer, rather than that the same result should
be reached through nonsuit or verdict after all the expense and
trouble of preparation and trial have been incurred. The pleader,
in this count, does not merely allege the ultimate fact that Pybus
was the agent of the defendants, but sets up the preliminary facts
by which he claims this relation is established. The demurrer ad-
mits only the facts pleaded, not the legal conclusions drawn by
the pleader. The principal or master is responsible for the negli-
gence of the agent or servant only as to acts done within the
scope of the agency or service. The unequivocal allegation that
the act is done by the principal or master by or through the agent

or servant necessarily connotes the idea that the agent or servant was employed or directed to do the particular act. But if the petition alleges that one is the agent or servant of another, without disclosing either explicitly or implicitly the scope of the employment, and then alleges an act done by the agent, there is no inference that the act was within the scope of the employment; and the petition is demurrable as not setting out a cause of action against the principal.

The doctrine that the principal is not responsible for the acts of his agent not within the scope of the employment is so well established as to require no citation of authority; but as applied to the specific question of the operation of automobiles, we call attention to the following cases. In Clark *v.* Buckmobile Company, 107 N. Y. App. Div. 120 (94 N. Y. Supp. 771), it is held: "In an action brought to recover damages for personal injuries sustained by the plaintiff in consequence of being struck by an automobile owned by the defendant, the fact that the persons in charge of the automobile at the time of the accident were employees of the defendant does not render the defendant responsible for their negligent acts unless they were then engaged in the defendant's business." Likewise in Stewart *v.* Baruch, 103 N. Y. App. Div. 577 (93 N. Y. Supp. 161): "In an action brought to recover damages for personal injuries sustained by the plaintiff in consequence of his being struck by an automobile while crossing a city street, the fact that the defendant was the owner of the automobile and that the chauffeur in charge thereof was in his employ is sufficient to establish *prima facie* that the chauffeur was acting within the scope of his employment at the time. If, however, it appears that at the time in question the chauffeur, in disobedience of the defendant's express instructions, was using the automobile for his own pleasure, the defendant is not liable to the plaintiff." Also, to quote from Patterson *v.* Kates, 152 Fed. 481: "Defendant owned an automobile which broke down on the way from Atlantic City to Philadelphia, and which he then left in charge of his driver, with directions to repair it and bring it on to Philadelphia. After the driver had reached the Delaware river, and while waiting for the ferry, he consented to take a third person in the machine to a place about a mile back on the road, and, while making such trip, through his negligence in running too fast he

came into collision with a horse and buggy on the highway, by which plaintiffs were injured. *Held,* that under such facts defendant was not liable for the injury." See, generally, Huddy on the Law of Automobiles, 64, 94, 95. See also McCarthy *v.* Timmins, 178 Mass. 378 (59 N. E. 1038) ; Hayes *v.* Wilkins (Mass.), 9 L. R. A. (N. S.), 1033, and notes (80 N. E. 449).

Further, as to this count, it may be said that the premise, "defendants permitted Pybus to take and run said automobile," and the conclusion pleaded, "said Pybus was, by said act, created the agent of each and all of said defendants," present a plain case of legal non sequitur. Agency arises by contract, express or implied. The courts will not imply, nor could the jury legally imply, an agency, from the facts stated. Under the British motor-car act of 1903, the person causing or *permitting* a motor car to be used contrary to the regulations is held responsible, as well as the driver, in certain instances. Pettitt, Law of Motor Cars, 62; Pettitt, Law of Heavy Motor Cars, 58. But in this State we have no such statute. From what we have said it is apparent that the general demurrer was properly sustained, to not only the first count, but also to the second.

The third and fourth counts proceed upon a very different theory than that of agency. It is insisted, in the argument, that automobiles are to be classed with ferocious animals, and that the law relating to the duty of the owners of such animals is to be applied. It is not the ferocity of automobiles that is to be feared, but the ferocity of those who drive them. Until human agency intervenes, they are usually harmless. While, by reason of the rate of pay allotted to judges in this State, few, if any, of them have ever owned one of these machines, yet some of them have occasionally ridden in them, thereby acquiring some knowledge of them; and we have, therefore, found out that there are times when these machines not only lack ferocity, but assume such an indisposition to go that it taxes the limits of human ingenuity to make them move at all. They are not to be classed with bad dogs, vicious bulls, evil-disposed mules, and the like. In the case of Berman *v.* Schutlz, 84 N. Y. Supp. 292, quoted in Huddy on the Law of Automobiles, 64, it is said, as to the duty of an owner who leaves his automobile unguarded at the street curb: "When, however, the person in charge of a motor car leaves it upon the

street, it is his duty to take all reasonable care that no injury will result during the time the machine is there, especially if the car be left standing alone with no person in charge of it. It is not his duty, before leaving the car, to chain it to a post, or in some manner to fasten it so that it would be impossible for it to be started by a third person. If, during the absence of the person in charge of the car and after he has turned off the power and applied the brake, the car be started by the wilful act of two small boys, and collide with a wagon, the unauthorized interference and act of the boys is the proximate cause of the injury, and the owner of the car is not liable." Without approving that decision, so far as it places the act of small boys upon the same footing with those of conscious agents sui juris, we cite the case upon the general principle included.

Several turntable cases and other decisions upon attractive nuisances are cited in the brief of the plaintiff in error as being apposite. Conceding that an automobile may be considered as within the purview of these cases, still it must be remembered that in the case at bar the person who immediately did the injury was not an irresponsible child, but was a conscious agent who had long since arrived at the age of discretion. While it is alleged that the defendants left the automobile where opportunity to take and operate it was given to a person inexperienced in the operation of the machine, yet this is very different from alleging, as is necessary even under the theory of the turntable and other attractive-nuisance cases, that the defendant left the automobile where opportunity to operate it was given to a person whose mental incapacity and indiscretion was such that he would be attracted to interfere with it and would not know better than to trespass upon it. Even if we could for a moment concede (as in all common sense we can not) that it would be negligent for a person to leave an automobile in a shop or garage without chaining it down or locking it in, still when the injury which actually happens is directly resultant from the immediate negligence of a conscious, efficient, and responsible actor, with whose conduct the former is in no wise bound, by any privity, the leaving of the machine unguarded is not the proximate cause of the injury. A hand-car left by a section crew near a railway track would probably tend to attract young and incautious persons to commit the trespass of putting the car on the

track and riding. As to passengers, or persons on the track by
permission or invitation, the railway company might be held liable
for an injury arising as a result of the car being thus run by the
youthful and incautious trespassers, on the theory that a railroad
company is under a duty to maintain its tracks, and its appliances
upon them, with reasonable care to protect from injury persons
lawfully passing over the tracks or being transported upon them.
Such indeed is substantially the holding in the case of Salisbury v.
Erie R. Co., 66 N. J. Law, 233 (50 Atl. 117, 88 Am. St. R. 480);
but in that case the court says: "If a master lends his wagon to
his servant to carry the servant's property over an ordinary public
highway, no one would seriously contend that, while the servant
was engaged in his own business, the master would be liable for
any injury which resulted from the negligence of the servant. It
would not be an injury done in the service of the master, and the
master would be under no duty to the public to maintain the safety
of the highway."

In the case of Reynolds v. Buck, 127 Iowa, 601 (103 N. W.
946), the defendant dealt in automobiles, and his son (who, for
the sake of clearness and for the purpose of distinguishing him
from the elder Buck, we may call the young Buck) clerked in the
store. On a holiday, the young Buck, outside the scope of his
employment, took one of the automobiles and carried a young lady
to ride. While he was driving, plaintiff's horse took fright at the
machine, whereby plaintiff was injured. It was held by the court
that the defendant was not liable, even conceding the young Buck's
negligence.

In the argument of the case the discussion ran into several col-
lateral matters; but we do not deem it necessary to pursue the sub-
ject further. None of the counts set forth a cause of action. If
Pybus were a party defendant, of course, under the allegations,
he would be liable. In running, automobiles are dangerous ma-
chines. This State has not yet, as many States have done, enacted
those regulations which the introduction of this new mode of con-
veyance would seem to make salutary. Until some change is made,
the responsibility of persons owning, keeping, and operating motor
cars will be determined according to the precedents of the common
law and the general law upon cognate subjects. Reckless driving
of these machines brings upon the person responsible not only

civil liabilities, but sometimes the penalties of the criminal law. Indeed, as we learn outside the record, Pybus, for the reckless taking of the life of the child whose homicide is the basis of this action, has been convicted and sentenced for involuntary manslaughter.    The persons immediately responsible will be held to full liability; but persons only so remotely connected with the injury as these defendants are can not be held.        *Judgment affirmed.*