39244. GRIFFITH v. CHEVROLET MOTOR DIVISION OF GENERAL MOTORS CORPORATION *et al.*

Decided March 5, 1962—Rehearing denied
March 29, 1962.

*Almon, Clein & Ray, Everett L. Almon, Harvey A. Clein,* for plaintiff in error.

*Greene, Neely, Buckley & DeRieux, Buchanan, Edenfield & Sizemore, William H. Major,* contra.

EBERHARDT, Judge. ■ The first question presented in this case is as to the liability of Chevrolet, the manufacturer. Plaintiff alleged that the defect in the steering mechanism existed at the time the truck was manufactured and could have been discovered by a reasonable inspection. ·

As we view it, this case is controlled by *Washburn Storage Co. v. General Motors Corp.,* 90 Ga. App. 380 (3) (83 SE2d 26), where it was held: "A manufacturer who sells an article knowing that it is likely to be resold or used by other people than the buyer will be held liable for an injury to a stranger caused by a defect which might be discovered by reasonable inspections by the manufacturer." This, of course, is the rule laid down by Justice Cardozo in MacPherson v. Buick Motor Co., 217 NY 382 (111 NE 1050, LRA 1916F 696, AC 1916C 440) which has been approved in a number of Georgia cases. *E.g., Simmons Co. v. Hardin,* 75 Ga. App. 420, 426 (43 SE2d 553); *Moody v. Martin Motor Co.,* 76 Ga. App. 456, 461 (46 SE2d 197); *Chrysler Corp. v. Rogers,* 92 Ga. App. 109, 112 (88 SE2d 318). See, Restatement, Torts § 395; 7 Blashfield, Cyclo-

pedia of Automobile Law & Practice § 4812 (1950, Supp. 1961); Hilkey, Actions for Wrongful Death in Georgia (Pt. 5), 22 Ga. B. J. 325, 337 (n. 62) (1960); Annot., 78 ALR 2d 460, § 3.

Chevrolet raises certain contentions about privity of contract and the lack thereof in this factual situation. Such has been done in negligence actions, we suppose, as long as they have been litigated; but less and less effectively with the passage of time. "In 1842 Lord Abinger foresaw 'the most absurd and outrageous consequences, to which I can see no limit,' if it should ever be held that the defendant who made a contract with A would be liable to B for his failure to perform that contract properly. What happened in the next century was enough to make the learned jurist turn in his grave. The courts began by the usual process of developing exceptions to the 'general rule' of nonliability to persons not in privity. The most important of these was that the seller of a chattel owed to anyone who might be expected to use it a duty of reasonable care to make it safe, provided that the chattel was 'inherently' or 'imminently' dangerous. In 1916 there came the phenomenon of the improvident Scot who squandered his gold upon a Buick, and so left his name forever imprinted upon the law of products liability. Cardozo, wielding a mighty axe, burst over the ramparts, and buried the general rule under the exception." Prosser, Strict Liability to the Consumer, 69 Yale L. J. 1099-1100 (1960).

The necessity for privity has long been dispensed with in Georgia where the article is "inherently dangerous." *Blood Balm Co. v. Cooper*, 83 Ga. 457 (10 SE 118, 5 LRA 612, 20 ASR 324). Articles which may be classed as "imminently dangerous," i.e., dangerous if imperfectly made, are also excepted from the privity requirement under the rule of MacPherson. See *Simmons Co. v. Hardin*, 75 Ga. App. 420, supra, dealing with a defectively manufactured sofa bed. It would appear that, given the requisite negligence on the part of the manufacturer, the privity requirement is without vitality in Georgia. See Annot. 74 ALR 2d 1192, § 23. But a consideration of the viability of the privity rule is unnecessary here since the factual situation places the case clearly within the rule of *Simmons* and *Washburn*.

Even if it be said that Nalley had actual knowledge of the defect after the purchaser first complained to it that he was having trouble with his steering mechanism and brakes, which might have the effect of changing the latent defect to a patent one and thus insulate the manufacturer from liability (*Elrod v. King*, 105 Ga. App. 46, 123 SE2d 441; *Harley v. General Motors Corp.*, 97 Ga. App. 348, 103 SE2d 191), yet, it appears here that Chevrolet obtained the same knowledge of the defect when complaint was made to Muell, its agent, and that he then assumed the obligation to have Nalley correct it.

It should be observed that since plaintiff was neither a "purchaser" nor an "ultimate consumer" he can not rely upon any implied warranty of the manufacturer under the provisions of the act of 1957 (Ga. L. 1957, p. 405; *Code Ann.* § 96-307). See *Revlon, Inc. v. Murdock*, 103 Ga. App. 842 (120 SE2d 912).

But the question of whether there was an imperfection in the manufacture of the truck, of the purchaser's want of ordinary care in the driving of the truck, if any, under the facts here (Cf. *Cruse v. Taylor*, 89 Ga. App. 611 (3), 80 SE2d 704), and of the proximate cause of the collision are for the jury. It was error, therefore, to sustain Chevrolet's general demurrer.

■■ The liability of Nalley as *selling dealer or vendor* of the chattel made by Chevrolet is also controlled by *Washburn Storage Co. v. General Motors Corp.*, 90 Ga. App. 380, supra, where the second headnote is: "A dealer may assume that the manufacturer of an article not dangerous per se has performed a required duty in properly constructing the article and in not placing upon the market an article which is defective and likely to inflict injury." In the opinion, it is indicated that a dealer is not relieved of *all* duty of inspection under all circumstances. Accord: Restatement, Torts, § 402 (1948 Rev.). But see, 2 Harper & James, Torts, § 28.29 at p. 1597 (n. 7) (1956).

An automobile has been held *not* "dangerous per se" or "inherently dangerous" almost since its first appearance in Georgia. *Fielder v. Davison*, 139 Ga. 509 (1) (77 SE 618) (1913); *Lewis v. Amorous*, 3 Ga. App. 50, 54 (59 SE 338) (1907). Therefore, under the facts alleged here, the rule of *Washburn* quoted above applies and there is no liability on Nalley's part merely as dealer or vendor.

█ A more difficult question is presented by plaintiff's other allegations as to purchaser's relationship with Nalley. The petition construed as a whole indicates that Nalley had agreed to repair purchaser's truck, giving rise to an employer-independent contractor relationship in which Nalley was a repairman.

One allegation relative to repair is that, after purchaser's initial complaint, Nalley's ". . . agent stated to [purchaser] that there was nothing wrong with the steering gear . . . and front wheels on said truck, that is [sic] was only natural for the steering gear to vibrate on new trucks." Another allegation was that "The vibration of the steering gear and front wheels of said truck continued and . . . for nine or ten times thereafter . . . [purchaser] caused said truck to be returned to [Nalley], leaving it there after reporting to and requesting [Nalley's] agent to have same repaired, but nothing, except the relining of said brakes and installation of said drum, was ever done about it and the vibration of said steering gear and front wheels became more noticeable with each passing day . . ." until the date of the collision. A third allegation was that on one occasion Nalley's service manager "instructed a mechanic employee of Nalley Chevrolet, Inc. to take said truck out upon the roadway and to determine the trouble and said mechanic employee took the truck out upon the expressway and upon returning to Nalley Chevrolet, Inc. with said truck informed [purchaser] that there was no danger and that he could continue to drive the truck."

The negligence alleged against Nalley is as follows:

"(a) In failing to locate and determine the cause of the vibration of said steering gear and front wheels after Dwight G. Wood had put its agents on notice of said vibration.

"(b) In failing to repair and make safe the use of said truck for Dwight G. Wood.

"(c) In failing to notify Dwight G. Wood of the danger and risk involved when operating said truck with its front wheels and steering gear vibrating."

The MacPherson rule has been generally extended to repairmen and "the late decisions are agreed that the man who negligently repairs a vehicle or any other chattel is liable to

others who may be injured because of that negligence, to the same extent as if he had made and sold the chattel in the first instance." Prosser, Law of Torts, § 85 at p. 517 (1955 ed.). Restatement, Torts, § 404; Kalinowski v. Truck Equip. Co., 237 App. Div. 472 (261 NYS 657); Vrooman v. Beech Aircraft Corp., 183 F2d 479 (10th Cir.); Prosser, Strict Liability to the Consumer, 69 Yale L. J. 1099, 1101 (n. 21) (1960). This rule has been adopted in Georgia in *Moody v. Martin Motor Co.*, 76 Ga. App. 456, supra, *Frank Graham Co., Inc. v. Graham*, 90 Ga. App. 840 (84 SE2d 579) and *Harley v. General Motors Corp.*, 97 Ga. App. 348, supra, all specifically involving motor vehicles.

An examination of these cases may prove helpful to a decision on this point. In *Moody*, 76 Ga. App. 456, supra, the plaintiff's employer engaged the defendant to make necessary repairs to a truck's steering gear and brakes. The truck was later returned to the employer as repaired when in fact the steering gear and brakes were in substantially the same condition as when the truck was taken to the defendant. Plaintiff proceeded to drive the truck in the course of his duties when first the steering gear malfunctioned and then the brakes failed. In plaintiff's action for personal injuries, this court reversed a ruling sustaining defendant's general demurrers. *Graham*, 90 Ga. App. 840, supra, involved both personal injury and property damage to one who had twice returned his recently purchased car to the defendant repairman because the brakes were defective. On each occasion he was assured that the brakes were in good working order. The trial court overruled the defendant's general demurrer and the jury returned a verdict for plaintiff. On appeal both the order on the demurrer and the jury verdict were affirmed. Particularly significant is the fact that the evidence disclosed that the area of the brake mechanism where a defect was found was never actually examined by the defendant's employees. In *Harley v. General Motors Corp.*, 97 Ga. App. 348, supra, the parties were much the same as in the case under consideration. A third party plaintiff brought suit against a manufacturer and dealer-repairman for personal injuries. The purchaser of the new automobile had discovered that the accelerator pedal stuck,

and returned the car to the dealer for repairs. Later the same sticking accelerator pedal was allegedly the cause of plaintiff's injuries. One of the allegations of the dealer-repairman's negligence was "in accepting the vehicle for repair of the defect and failing to make the agreed proper and necessary repairs." The trial court's ruling sustaining the dealer-repairman's general demurrer was reversed here. (The manufacturer's general demurrer was sustained on the ground that this specific defect was patent.)

Two other cases involving the companion principle of "failure to warn" should be considered here. *J. C. Lewis Motor Co. v. Williams*, 85 Ga. App. 538 (69 SE2d 816) involved a gasoline operated farm tractor and tobacco transplanter purchased from defendant and operated as a unit. Through various acts of alleged negligence, the defendant failed to supply the purchaser with a "U" pipe that would divert the carbon monoxide fumes produced by the tractor from the face of one of the operators of the transplanter, in this case the plaintiff. It was alleged that neither the purchaser nor the plaintiff knew of the fact that the carbon monoxide fumes were poisonous. Predictably, the plaintiff operator suffered various injuries from the open exhaust pipe. Several of the allegations of negligence dealt with the defendant's failure to warn either purchaser or plaintiff of the danger involved in operating the machinery without the "U" pipe. The defendant's general demurrer was overruled and this court sustained that action. Of similar import is *Capital Automobile Co. v. Shinall*, 103 Ga. App. 695 (120 SE2d 351). There, Shinall purchased a new Cadillac from defendant and had trouble starting it. After many complaints and attempts to fix the starter and other defective parts of the electrical system, defendant's employee showed Shinall how to start the car by placing the metal shaft of a screwdriver across the starter terminals, warning him only that he might get burned if the manifold were hot. One morning Shinall was severely shocked when attempting to start the car in this manner. The gist of the plaintiff's allegations was that the defendant failed to warn him of the danger from electric shock involved in thus starting a car. Again, the defendant's general demurrer was held properly overruled.

We think plaintiff's allegations relating to failure to repair and failure to warn as hereinabove set out, while not a mode of perfection, fall well within the ambit of the cases just discussed and are sufficient as against a general demurrer. Of course, standard-of-care, and proximate causation questions must be submitted to the jury, the final arbiter of most of these questions. For the reasons given, it was error to sustain Nalley's general demurrer.

*Judgment reversed. Carlisle, P. J., and Russell, J., concur.*

ON MOTION FOR REHEARING.

Chevrolet contends in its motion for rehearing that there was no specific allegation in the petition that the acts of its agent, Muell, were within the scope of his employment and that it thus fails to meet the standard of *Lewis v. Amorous*, 3 Ga. App. 50, supra, and similar cases. While it is true that there was no such allegation in the petition, it is also true that as against a general demurrer a general allegation of agency is sufficient. *Conney v. Atlantic Greyhound Corp.*, 81 Ga. App. 324 (2) (58 SE2d 559). Further, in the action here plaintiff seeks to recover from Chevrolet because of defective construction, of which it is alleged in paragraph 13 of the petition, as amended, that "both said defendants having had notice of the improper functioning of said steering gear and front wheels on said truck." In other parts of the petition, it is alleged that the purchaser, Wood, on several occasions called Muell, an agent of Chevrolet, and informed him of the malfunctioning of the steering and wheels. If, as is alleged here, Chevrolet had notice of the defect prior to the time when, because of the defect, the steering mechanism failed and plaintiff was damaged, we do not think any insulation from liability on its part to a stranger, such as plaintiff here, results merely because somebody else may also have learned about the defect. Under such circumstances we do not think the rule of *Harley v. General Motors Corp.*, 97 Ga. App. 348, supra, and *Elrod v. King*, 105 Ga. App. 46, supra, requires any different result.

*Motion denied.*