MILTON DRAZEN *vs.* OTIS ELEVATOR COMPANY.
JUDITH DRAZEN, *p.a. vs.* SAME.

APRIL 1, 1963.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

FROST, J. These companion cases of trespass on the case for negligence were brought by a father and his minor daughter to recover for injuries sustained by the daughter in an escalator accident, and for consequential damages to the father. They were tried before a justice of the superior court sitting with a jury.

Each case is here on the plaintiff's exception to the decision of the trial justice in granting the defendant's motion for a directed verdict. We will treat the evidence as though there were but one case, that of the minor, and our decision will apply to both cases.

The father's case was brought in his lifetime. He died before the trial was had. After his death his widow, Lena C. Drazen, was appointed administratrix of his estate and was permitted to be substituted as party plaintiff in the case brought by him.

On May 26, 1950 Mrs. Drazen and her daughter Judith, then three years old, were on the second floor of the Outlet Company's store in Providence. With them were Mrs. Spigel, Mrs. Drazen's sister-in-law, and her son Robert. Somewhat after four o'clock they decided to go home and took the escalator on the second floor to descend to the first floor. Mrs. Spigel and her son were ahead and Mrs. Drazen and Judith followed. Judith was to the right of

her mother who was holding her left hand. Her right hand was on the rail as they were going down. The handrail was of black rubber and was constantly moving. Mrs. Drazen was carrying her purse and Judith's red sweater in her left hand. Mrs. Spigel and Robert stepped off as they reached the first floor. As they did Judith cried out, "Mommy, my hand." Mrs. Drazen saw that she had three fingers of her right hand in the slot that the rail goes into and the suction pulled the sleeve of the sweater that Mrs. Drazen was carrying into the slot. Mrs. Drazen screamed and someone stopped the handrail and in about ten minutes Judith was able to remove her fingers after a maintenance man had unscrewed a plate. She was then taken to a first-aid room. There the nurse said she should be taken to the hospital and she was at once taken to Rhode Island Hospital where she was attended by Dr. G. Edward Crane. She was in the hospital a few days and then returned home.

Her injuries were to the middle, ring and little fingers of her right hand. The accident left the first joint of the ring finger stiff so that the finger is somewhat crooked.

Mrs. Drazen testified concerning her daughter's injuries that on or about January 21, 1953 her daughter and her husband had been compensated by the Outlet Company in the sum of $2,700 following claims made by them against that company arising out of this injury.

At the close of plaintiff's case defendant rested without submitting any evidence and moved for a directed verdict. The court directed a verdict for defendant on counts one and two of plaintiff's amended declaration, and after hearing arguments of counsel as to the third count directed a verdict for defendant on that count as well, but counsel has briefed and argued only the exception to the court's action as to the third count of the amended declaration.

The plaintiff's allegation of negligence is that "the defendant negligently and carelessly manufactured, constructed and installed said escalator or moving stairway in

that it manufactured, constructed and installed the part or parts of said escalator or moving stairway where the descending handrail enters the balustrade in such a manner that a dangerous and unsafe condition was created so that persons lawfully using said escalator or moving stairway were in great danger of catching their hands in the clearance space between said descending handrail and balustrade, and thus being injured thereby."

The escalator in question with three others was sold to the Outlet Company under a contract dated April 29, 1941. It had a standard handrail, the width of which was three and one-quarter inches. As the handrail descended it passed into an opening in the newel stand which was protected by a ring of bristles leaving a space between bristles and edge of the handrail of about one-eighth of an inch. The bristles, black in color, were estimated to be one-half inch in length.

Frank W. Marcaccio, chief of the division of industrial inspection in the department of labor, testified that on May 26, 1950 he was chief elevator inspector; that it was his responsibility to inspect escalators; and that at the time of the installation in question in 1941 the design of the moving handrail and the aperture through which the handrail disappears into the balustrade was in accordance with the usual practice of escalator manufacturers at that time.

Thomas Imondi, a department manager of the Outlet Company, testified that he had had previous experience with accidents at this location referring to the place where plaintiff was hurt, and that there were similar accidents there.

William J. Smith testified that he had been employed by the Otis Elevator Company for twenty years; that he was now district maintenance supervisor; that he had been a mechanic; that the escalator in question was the standard type of Otis escalator; that the handrail was a three-and-

one-quarter-inch standard handrail; that the bristles were one-half inch in length; that there was one-eighth of an inch between the end of the bristles and the edge of the handrail; that he had no report of accidents occurring by the placing of fingers in that opening prior to May 26, 1950; and that he had no knowledge of such accidents in that manner prior to May 26, 1950.

The plaintiff in her brief states that the sole issue to be decided is "whether the fact that prior to plaintiff's injury similar accidents to the knowledge of the Outlet Company had occurred on several occasions that the continued use of the escalator by the Outlet Company constituted, *as a matter of law,* such an independent intervening negligent act as to break the causal connection between the defendant's negligence and plaintiff's injury." Counsel also state that they are in complete agreement that the rule enunciated in *Mahogany* v. *Ward,* 16 R. I. 479, and *Floyd* v. *Turgeon,* 68 R. I. 218, is the established law of this state.

The testimony is clear that prior to plaintiff's accident there were accidents on the escalator which were known to the Outlet Company although it would seem that they must have been minor in nature, and it is equally clear from the evidence that those accidents were not known to defendant. It is reasonable to conclude that if such accidents were of any moment they were taken care of by the Outlet Company. Were there evidence that defendant knew of prior accidents or evidence from which it could be said that it should have had such knowledge, we would be of the opinion that there would be at least a question for the jury as to the liability of defendant for the injury received by plaintiff, but there is no such evidence.

The plaintiff's evidence is, referring to the testimony of chief Frank W. Marcaccio, "To the best of my memory at

the time of the installation it was installed in the best engineering practice."

The plaintiff in her brief states that there is "ample testimony from which reasonable inferences could be drawn that the defendant could have reasonably foreseen or anticipated the continued use of the particular escalator in its dangerous condition by the Outlet Company, but that the reasonable inferences to be drawn therefrom is that the defendant actually did become apprized of the fact that the Outlet Company was continuing to use the escalator in its dangerous condition prior to plaintiff's injury and acquiesced with the Outlet Company in that use."

We find in the transcript no basis for such statement. What defendant knew we do not know, but we find nothing that would suggest to us that it had reason to know that such a situation might arise. Assuming that defendant was negligent in constructing the escalator as it did, it would seem from the evidence that the Outlet Company became aware of defendant's negligence before it was known to defendant.

The effect of the Outlet Company's knowledge upon defendant's liability may be expressed by the following quotation from 38 Am. Jur., Negligence §72, p. 731: "One who acts negligently is not bound necessarily to anticipate that another person will be negligent after the latter has discovered the danger arising from the former's negligence. The first actor, however, is not permitted to assume that the second actor will discover the danger caused by the first actor's negligence. Accordingly, where the second actor, after having become aware of the existence of a potential danger created by the negligence of the first actor, acts negligently in respect of the dangerous situation and thereby brings about an accident with injurious consequences to others, the first actor is relieved of liability, because the condition created by him was merely a circumstance and not the proximate cause of the accident."

The record shows that the accident to the plaintiff was not the first of its kind and that such other accidents were known to the Outlet Company but were not made known to this defendant. The evidence places liability upon the Outlet Company and leaves no question of fact as to the liability of the defendant to be decided by the jury. The action of the trial justice in directing a verdict for the defendant was without error. *Mahogany* v. *Ward, supra; Prue* v. *Goodrich Oil Co.,* 49 R. I. 120; *Ford Motor* v. *Wagoner,* 183 Tenn. 392; *Wissman* v. *General Tire Co.,* 327 Pa. 215.

In each case the plaintiff's exception is overruled, and each case is remitted to the superior court for entry of judgment on the verdict as directed.

*Louis J. Perez, William J. George,* for plaintiffs.

*Sherwood & Clifford, Kirk Hanson, A. Lauriston Parks,* for defendant.