42163: GENERAL MOTORS CORPORATION v. JENKINS, by Guardian, et al.
42164. DANIELS et al. v. JENKINS, by Guardian, et al.

ARGUED JULY 6, 1966—DECIDED DECEMBER 20, 1966—

*King & Spalding, Charles H. Kirbo, R. Byron Attridge, John C. Staton, Jr.*, for General Motors.

*Swift, Currie, McGhee & Hiers, William W. Horton, Spivey & Carlton, Milton A. Carlton*, for Daniels et al.

*Florence Hewlett Dendy, Cullen M. Ward, Thomas W. Odom, George W. Fryhofer,* for Jenkins et al.

PER CURIAM. ■ The first petition in this case filed January 23, 1963, was amended on June 5, 1964, by striking its contents and filing a rewritten petition. On September 25, 1964, the court sustained general demurrers of both defendants and granted 30 days leave to amend; this time was by further order extended to November 23, 1964. On November 20, the plaintiff again amended by striking the pleadings filed and substituting another rewritten petition, to which demurrers and objections were filed. Another amendment was added October 20, 1965, which was objected to because, among other reasons, it was not filed prior to the expiration of the time allowed for amendment by the court's first order on demurrers as later extended. The contentions are that under the law of the case the stricken petition of June 5, 1964, failed to set forth a cause of action; that the defect was not cured by the rewritten petition of November 20, 1964, and that the amendment of October 20, 1965, came too late. A final order was entered overruling these objections on January 12, 1966, and also overruling the general and sustaining certain special demurrers. It is settled by *Northside Manor, Inc. v. Vann,* 219 Ga. 298 (133 SE2d 32) that, where a general demurrer is sustained with a stated number of days in which an amendment may be filed, and no such amendment is offered within the time limited, it is the law of the case that (1) the original petition failed to set out a cause of action, and (2) an amendment offered after the time limited is nugatory. Where, however, a material amendment is in fact allowed and filed subject to demurrer or objection within the time allowed by the court's order, and where nothing in such original order purports to dismiss the petition *in praesenti,* the question of the petition's sufficiency is opened for a fresh adjudication. *Perkins v. First Nat. Bank of Atlanta,* 221 Ga. 82 (7) (143 SE2d 474). This being so, where the petition is again amended prior to any ruling on the demurrers filed to the petition as amended, the court may properly consider, in passing on the sufficiency of the petition as a whole, amendments subsequently filed, and if the plead-

ings in their final form set out a cause of action he may properly overrule the renewed general demurrer. *Bradshaw v. Crawford,* 77 Ga. App. 441 (49 SE2d 169); *Smith v. Bugg,* 35 Ga. App. 317 (1) (133 SE 49). We do not mean by this that if the petition as first amended is so utterly lifeless that there is nothing to amend by, a later amendment might cure the defect; but where, as here, the petition is in fact materially amended, and does present enough for adjudication, then a subsequent amendment is not to be factitiously disallowed where it does in fact tend to complete and perfect the cause of action already set out. The facts here do not bring the case within the ruling in *Simpson v. Hayes,* 208 Ga. 754 (69 SE2d 567). There it had become the law of the case both that the original petition failed to set out a cause of action, and that the first amendment filed within the time allowed by the court failed to add any relevant and material matter. After the decision to that effect in *Hayes v. Simpson,* 83 Ga. App. 22 (62 SE2d 441) the plaintiff again attempted to amend, long after the time for amendment had run out, and the situation was then just as though no amendment had been offered prior to the expiration of the time allowed in the court's order sustaining the general demurrer, which puts this case on a par with *Northside Manor, Inc.,* 219 Ga. 298, supra. In the present case the court properly considered the last rewritten petition along with the amendment of October 20, 1965.

■ Where a vehicle is brought to an automobile dealer by its owner for the purpose of having it repaired and the owner reveals to the dealer the fact that there is a dangerous defect in the vehicle, the failure of the dealer to discover and correct the defect when he could have done so by the exercise of ordinary care relieves the manufacturer of liability, unless the manufacturer should have foreseen that a dealer might fail to discover and remedy the defect by the exercise of ordinary care. The petition in this case fails to make this one allegation which would bring the manufacturer's liability into being. *Southern R. Co. v. Webb,* 116 Ga. 152 (42 SE 395, 59 LRA 109); Restatement of the Law, Torts 2d, Vol. 2, § 452 (2) (see comment on Subsection (2) at pages 488 and 489; "d" under Sub-

section (2), "e", "f" and illustration 10; see also § 447 (a), (b) and (c)). See *Maytag Co. v. Arbogast*, 42 Ga. App. 666, 667 (1) (157 SE 350), which recognizes that the rule that the dealer's failure to inspect is not an intervening cause might be different where the dealer had knowledge of the defective condition. *Harley v. General Motors*, 97 Ga. App. 348 (103 SE2d 191); *Elrod v. King*, 105 Ga. App. 46, 49 (123 SE2d 441); City of Villa Rica v. Couch, 281 F2d 284 (5th Cir.); Drazen v. Otis Elevator Co. (R. I.) (189 A2d 693); Ford Motor Co. v. Atcher (Ky.), 310 SW2d 510; E. I. DuPont de Nemours & Co. v. Ladner, 221 Miss. 378 (73 S2d 249); Rulane Gas Co. v. Montgomery Ward & Co., 231 N.C. 270 (56 SE2d 689); Ford Motor Co. v. Wagoner, 183 Tenn. 392 (192 SW2d 840, 164 ALR 364); Kline v. Moyer, 325 Pa. 357 (191 A 43, 111 ALR 406); Ford Motor Co. v. McDavid, 259 F2d 261 (4th Cir.) cert. den. 358 U. S. 908; Nishida v. E. I. DuPont de Nemours & Co. (5th Cir.) 245 F2d 768; Crude Oil Contracting Co. v. Insurance Co. of North America, 118 F2d 476 (10th Cir.); Annotation, 164 ALR 371; 2 Harper & James, The Law of Torts, 1555, § 28.10.

The court erred in overruling the general demurrer of General Motors Corporation.

■ Is the manufacturer also liable as principal for any negligence of the dealer as agent in failing to discover and remedy the dangerous condition created by the loose rear suspension axle bolt? Nothing else appearing, a simple statement that the wrongful act was committed by the defendant's agent or servant in the prosecution of the principal's business and within the scope of the employment or agency is sufficient to invoke the doctrine of respondeat superior, but where the special facts by which the pleader claims that the relationship of principal and agent exists are set out, these facts take precedence over the conclusory statement and will control in determining whether an agency has been properly alleged. *Conney v. Atlantic Greyhound Corp.*, 81 Ga. App. 324 (1, 3) (58 SE2d 559). In addition to the conclusory allegation that the manufacturer, through its agent the dealer, committed all acts of negligence alleged against the latter, the following facts are set out: Gen-

eral Motors is in the business of manufacturing automobiles for sale through authorized franchised dealers; the defendant dealer and the corporation entered into a written contract making the dealer an authorized service agent for the purpose of selling and servicing GMC products, the contract being a personal service contract under which it was the dealer's duty to provide prompt and efficient service, receive and investigate complaints, inspect products before sale and make the 1,000-mile inspection above referred to, for the labor costs of which it is reimbursed by the manufacturer. These allegations were attacked by numerous demurrers, several of which were on the proposition that the statements of agency relationship were conclusions drawn from the pleader's interpretation of a written contract and that the terms of the contract not being pleaded, the facts alleged failed to show an agency relationship. While we recognize the general rule that a contract pleaded only as matter of inducement to set up the duty, the violation of which is the gravamen of the action need not be pleaded with such specificity as where it is itself the foundation of the cause of action, nevertheless, it is obvious that the determination of whether the relationship between the manufacturer and dealer is that of principal and agent or that of independent contractors must be determined from the written instrument, and it would be useless to make a determination based on the incomplete allegations of the petition where the instrument, when before the court, might demand a contrary conclusion. "If from the allegations of the petition it is obvious that there are pertinent and material provisions of the contract which are not pleaded a demurrer calling for them will lie." *Gardner v. Consolidated Loan &c. Co.,* 111 Ga. App. 581, 582 (142 SE2d 416). Similar allegations of agency as to a dealer franchise agreement were held in *Harley v. General Motors,* 97 Ga. App. 348, supra, to be equally consistent with an agency or an independent contractor situation, and demurrers to the allegations of agency were sustained. The trial court erred in overruling the special demurrers calling for the written contract and those attacking the allegations of agency as conclusory in nature.

■ We next consider the liability of the dealer. This is

controlled by *Griffith v. Chevrolet Motor Division of G.M.C.,* 105 Ga. App. 588 (2) (125 SE2d 525) in which it was held: "A repairman owes an original duty to the public to use ordinary care in making repairs so as not to endanger the person or property of others by his negligent performance, when the consequences of such conduct may be foreseen." The trial court properly overruled the general demurrer of this defendant.

As to case No. 42163, it was error to overrule special demurrers 5, 6(c), 7(b) (d) (e) (f) (h), 8(c) (d) (e) (f), 9(a) (d) (e), 10(a) (b) (f), 11(a) (b) (d), 12(d), 13(e) (f), 14(a) (c), 15(d) (e) (g) (k) (1) and 17(d). The remaining special demurrers were properly overruled, but the special demurrer numbered 3 to Paragraph 46 of the last amendment should have been sustained.

As to Case No. 41264, the general demurrer, special demurrer 20 to Paragraph 38, and special demurrers 22, 23, 27, 28, 29 and 30 to Subparagraphs (b) (e) and (f) of Paragraph 45 of the petition were properly overruled. The trial court erred in overruling special demurrers 21, 25, 26, 31, 32, 33, 34 and 39 to Subparagraphs (a), (d), (f), (g), (h) and (k) of Paragraph 45. The remaining special demurrers to which exception is taken were properly overruled.

*Judgments affirmed in part; reversed in part. Felton, C. J., Bell, P. J., Jordan, Hall and Eberhardt, JJ., concur. Frankum, P. J., Pannell and Deen, JJ., dissent to ruling in Division 2. Quillian, J., not participating.*

FELTON, Chief Judge, concurring. Speaking for myself alone, I desire to call attention to the fact that some of the conclusions and interpretations of the dissenters do not coincide with mine. I will give but one instance. The case of *Hatcher v. General Electric Co.,* 112 Ga. App. 585 (145 SE2d 647), is said by the dissent to be authority contrary to the conclusion reached by the majority. In that case the distributor of General Electric's parts had no actual knowledge that the replaced parts were *defective* or *dangerous.* The distributor was charged only with constructive knowledge and therefore General Electric's negligence was held to be concurrent. The law does not require actual knowledge on the part of the intervening actor as to a specific

defect. It is enough if it has actual knowledge of a dangerous condition in the vehicle or article in question and could have discovered the particular defect by the exercise of ordinary care.

DEEN, Judge, dissenting. The doctrine of intervening proximate cause arises, and is usually applied, where the original passive or static negligence, harmless in itself, merely furnished a condition on which a later act of negligence acts to effect the harm, or where the intervening act would have itself caused the injury whether or not the original act of negligence existed. Thus, in *Stiles v. Atlanta & W. P. R.*, 65 Ga. 370, it was held that the "independent, illegal act of a third person intervening and producing injury and *without which it would not have happened*," excused the other defendant, even though negligent. In this category falls *Taylor v. Atlanta Gas Light Co.*, 93 Ga. App. 766 (92 SE2d 709). Only where the second act operates on a passive or static condition not itself injurious does the question arise of whether the negligent author of the static condition should have foreseen that another would activate the situation and cause harm, and thus arises the doctrine of anticipation or foreseeability discussed in the majority opinion.

Here the negligence of the manufacturer created the dangerous condition, and the dangerous condition, without any activation by any other agency, injured the plaintiff. The negligence of the dealer did not *initiate* the harm but merely failed to neutralize the harmful agency. This case, therefore, falls under the rule enunciated by Judge Jenkins in *Georgia Power Co. v. Kinard*, 47 Ga. App. 483, 486 (170 SE 688), as follows: "The mere negligence of a third person in failing to guard against the defect or specific act or omission of the defendant which caused the injury will not constitute an intervening efficient act which will relieve the defendant from liability."

This accords with the Restatement, Torts 2d, § 452 (1) which states: "Except as stated in subsection 2, the failure of a third person to act to prevent harm to another threatened by the actor's negligent conduct is not a superseding cause of such harm. . . If the third person is under a duty to the other to take such action, his failure to do so will subject him to

liability for his own negligence, which is concurrent with that of the actor, for the resulting harm which he has failed to prevent; but his failure to perform his duty does not relieve the original actor of liability for the results of his own negligence."

The illustration from Restatement, cited by the majority opinion has no resemblance to this case except for the fact that a manufacturer is sued in both instances. As shown by the Restatement, Torts 2d, Appendix, it is a summary of Ford Motor Co. v. Wagoner, 183 Tenn. 392 (192 SW2d 840, 164 ALR 364). The annotation at page 371 of 164 ALR points out that the failure of the first purchaser of the automobile to have the hood fixed *when the manufacturer informed him of the danger and offered to repair it* relieved the manufacturer of any further duty toward future vendees from the informed purchaser because it "has done everything that reasonably could be expected to remove that danger or defect while the article is in the hands of the purchaser, the conscious act of that purchaser in refusing the offer for removal of the danger or defect would, as regards the vendor's liability for injury thereafter to a subsequent purchaser or other third person, constitute an independent, efficient, intervening cause which was not foreseeable by the vendor." P. 382.

The annotation then discusses the liability of a third party who has merely failed to inspect or discover the danger (such as the dealer here), and states (p. 384): "It has been generally held that the negligent failure of a manufacturer's or supplier's vendee to inspect for or to discover the existence of a hidden defect in the article sold will not operate to relieve the former of liability to a remote purchaser or other third person having occasion to come in contact therewith." Among the many cases cited are two from Georgia: *Maytag Co. v. Arbogast*, 42 Ga. App. 666 (157 SE 350), and *Maddox Coffee Co. v. Collins*, 46 Ga. App. 220 (167 SE 306). The following is quoted at length from *Maytag:* "Where the manufacturer of an article, such as a piece of machinery, which is built and assembled at the factory . . . knows of and conceals a latent defect in its construction which would render the machine dangerous to

persons not in privity of contract with the manufacturer, but who used the machine for the purpose intended, the mere negligence of the dealer, who purchased the machine from the manufacturer and sold it to a person injured by it, in failing to discover its defective condition, is not, as a matter of law, such an intervening act as would break whatever causal connection there might be between the manufacturer's negligence in putting out the machine with knowledge of its defective condition and an injury to a person, not in privity of contract with the manufacturer, received while operating the machine."

The Ford Motor Company case has received an interpretation by other courts since the cases discussed in the ALR annotation, supra. In Guffie v. Erie Strayer Co., 350 F2d 378, at page 382, it was discussed at length and held not to apply to a situation where TVA was negligent in the manner in which it delivered and stored concrete for a dam, and the other defendant was negligent in allowing the concrete to fall on a roof erected by it and in not cleaning off the roof, so that it collapsed and killed an employee. The same distinction was made in Heichel v. Lima-Hamilton Corp., 98 FSupp. 232, 240. The court first quoted hornbook authority that: "If the force which caused the injury is put in operation or motion by what is the negligence of the defendant, *and that force or motion is still in progress or operation and has not lost its identity and continuity as such when the injury occurs,* then the negligence which puts the injurious force in operation is the proximate cause." Following this the Ford Motor Co. case is distinguished "because there was not a continuity in the defendant's negligence, but a break in the chain of causation." See to the same effect Fredericks v. American Export Lines, 227 F2d 450.

The injurious force put in motion by General Motors was still in operation at the time of the plaintiff's injury. Under both Georgia and foreign authorities, and the well reasoned annotation in ALR, these circumstances are sufficient to charge the manufacturer with negligence proximately causing the injury, and the failure of a third person to take the proper steps to discover and correct the original negligence are a concurrent, not an intervening cause. In my opinion, it follows that both

are liable. This view is strengthened rather than weakened by the distinguishing language in some of the cited cases. In *Maytag,* supra, Judge Stephens' qualification that "the rule might perhaps be otherwise if the dealer had knowledge of the defective condition of the machine" is based on a 1911 case, Olds Motor Works v. Shaffer, 145 Ky. 616 (140 SW 1047), wherein the owner of a merry Oldsmobile, after discovering that the rumble seat would fall off the frame, took some visitors for a ride unaware and spilled them out. The court said the owner was solely liable. "The reason for this is that the action against the maker proceeds on the theory, and is founded on the fact, that in selling the article he practiced *fraud and deceit* in concealing the defects that made its use unsafe and dangerous; and, of course, when it is admitted or proven that he has not practiced any concealment, and that the purchaser was well informed as to the defect, the bottom drops out of the case against the maker." Id. p. 625. Prior to the landmark decision in Mac-Pherson v. Buick Motor Company, 217 N. Y. 382, 385 (111 NE 1050) allegations of fraud were considered essential to avoid the privity-of-contract pitfall, and MacPherson was memorable by reason of its initial statement: "The charge is one, not of fraud, but of negligence." Fraud was thereby eliminated as a necessary element of the cause of action. See also Anno., 78 ALR 2d, p. 460 et seq. Again, in *Hatcher v. General Electric Co.,* 112 Ga. App. 585, 596 (145 SE2d 647), it is stated: "The cases cited on the subject of insulation of manufacturers are cases where another party had *actual knowledge* of the defective manufacture and undertook to make repair thereof and failed to do so. Mere constructive knowledge is not sufficient to provide insulation of the manufacturer." Here the dealer neither had *actual knowledge* that the wheel was about to come off nor did he make any attempt to repair it. *Hatcher* demands a contrary conclusion from that here reached.

"If the negligent act of a person is according to human experience calculated to induce or invite disaster through the negligence of another, he cannot rely upon the doctrine of an intervening cause to insulate him from liability." *Smith v. Harrison,* 92 Ga. App. 576, 582 (89 SE2d 273). "Where a jury

question is otherwise presented as to whether the concurrent negligence of two defendants caused the plaintiff's injuries, the issue will not be resolved as a matter of law in favor of one defendant because the other defendant failed to exercise due care to avoid the consequences of such defendant's negligence." *Atlantic C. L. R. Co. v. Coxwell,* 93 Ga. App. 159 (2) (91 SE2d 135).

Taking the allegations of the petition as true, the manufacturer negligently released a defective automobile into the stream of commerce, and an innocent third party plaintiff was injured as the direct and proximate result of this negligence, which was a breach of its duty toward the plaintiff. Concurrently therewith the Daniels Chevrolet Company breached its own duty toward persons who might ride in the car by failing to discover the cause of the vibration in the rear wheel when the vehicle was brought to it for that purpose. Each had a separate duty toward the plaintiff, each breached that duty, and in my opinion it should be left to a jury to decide whether the negligence of either, neither, or both was the proximate cause of the injuries received without putting on the plaintiff the additional burden of alleging and proving that the manufacturer whose negligence created an active dangerous instrumentality was also negligent in failing to anticipate that the negligence which it did not itself know about would not be discovered by another.

I am authorized to state that Frankum, P. J., and Pannell, J., concur in this dissent.