McCook vs. Harp.

</div>

| 81 | 229 |
|----|-----|
| 98 | 171 |
| 81 | 229 |
| 110 | 733 |
| 81 | 229 |
| 121 | 468 |

1. In shaping questions for the jury, there was no error. The range was wide enough. Other questions, if thought necessary, should have been suggested by counsel.
2. A trustee who mixed trust funds with his, and used the whole as his own, is not relieved by showing that the outcome was so much Confederate money which he still has on hand.
3. An error by the jury in favor of the trustee is not cause for a new trial at his instance.
4. Interest for the remaindermen does not run until the death of the tenant for life, the estate being in money.
5. Taxes are chargeable to the tenant for life if they accrued while she lived and was entitled to the income.

June 1, 1888.

Practice in superior court. Trusts and trustees. Confederate money. Interest. Taxes. Before Judge Smith. Chattahoochee superior court. September term, 1887.

Martha A. Harp filed her bill against John C. F. McCook, alleging as follows: She is the daughter of Sarah Whittle, who died May 10, 1882, and the granddaughter of Elizabeth King, who died testate in 1860. By her will, Mrs. King devised that portion of her estate

going to her daughter Sarah to defendant in trust for said Sarah, his mother, at whose death it was to be divided share and share alike between Sarah's children. The will was duly probated; defendant accepted the trust, and received as trustee certain slaves, and money to the amount of $4,000, which was received at different dates during the late war. He applied the principal and interest of these funds to his own use, and now refuses to account for complainant's share. Complainant is one of eight children of Sarah Whittle, and is entitled to an eighth of the principal and interest mentioned. She prays for an accounting by defendant, and a decree against him for her share. Attached to the bill is a a copy of Mrs. King's will.

The defendant answered, admitting that complainant was the daughter of Mrs. Whittle and granddaughter of Mrs. King; that Mrs. Whittle died May 10, 1882; that Mrs. King died testate; and that the exhibit to the bill is a correct copy of her will, which was duly probated; and that respondent accepted the trust mentioned. But he says that on December 20, 1861, he received, as such trustee, two minor negro girls who were worth little for hire; but he hired them a short time and paid the proceeds to his mother, who then took the negroes and worked them until they were emancipated. In addition, he received in Confederate money $1,747.35, the interest on which he turned over to his mother. A portion of the money was turned over to her husband, who used it for her benefit, and after her death paid defendant $108. After the payment of tax and commissions allowed and the sum so loaned or paid her husband, defendant had on hand $1,330.65 in Confederate money, which was lost and became worthless by the results of the war, though he now has such money on hand and is ready to pay over complainant's share of

it.   When the division of the negroes and the estate of testatrix was made, defendant, as trustee, was required to give his note to one Weaver, as trustee for his wife, for about $200, to make his share equal to defendant's share as trustee in the estate; and he did give Weaver his note; and during the war when he received the Confederate money from the executors of testatrix, he offered the money to Weaver to pay the note, but Weaver refused to accept it. Defendant was thus unable to pay the note; and after the close of the war, Weaver demanded its payment, and defendant induced him to accept $91.77 in payment, which he paid Weaver February 22, 1867, which sum, with interest, the estate of defendant's *cestui que trust* owed him.   The principal and interest, on 11th April, 1882, amount to $187.92. On that day defendant received from James Whittle $108, which he appropriated to the payment of the sum due defendant, leaving due him $79.92.

On the trial, James Whittle testified for the complainant as follows : He was the husband of Mrs. Sarah Whittle, who died May 20, 1882.   Defendant let witness have for his wife $200, which he used for her, and was not to pay interest except to her.   In 1873, he scaled the debt from $200 and gave his note for $108. He was to use the money for the benefit of his wife; and after her death he paid the $108 to defendant.   The $200 was all defendant paid him out of the trust fund.

The receipts of defendant as trustee were introduced, one being a receipt dated December 20, 1861, for the two negro girls ; another a receipt dated April 5, 1862, for $284.77; another, December 3, 1862, for $1,162.58 ; all being given by defendant as trustee to the executors of Elizabeth King.   Three returns were introduced, the first showing the receipts from the executors, with interest thereon, amounting to principal $1,447.37, and

interest $114.05; also showing credits for $180.92; making the amount paid out by the trustee, above interest on the principal, $66.87. This return was admitted to record February term, 1865. The second return shows amount on hand, in Confederate money, the same principal, $1,447.37; interest on same for 1864, $101.31; hire of negroes due January 1, 1865, $180; with credits, including the amount above stated as overpaid, of $391-.03; leaving balance of principal, after paying amount due trustee, $1,337.65. This return was admitted to record May 9, 1866. The third return is only of the amount collected from James Whittle April 11, 1882, $108.10; being admitted to record April term, 1884. Complainant also introduced Barbour's tables, as reported in 34 *Ga.*

Defendant testified as follows: He received, as trustee, two negroes and $1,747.37 in Confederate money. He used it the best he could, just as he used his own; used it as his own, and when the war closed had it on hand. The interest on it he paid his mother until the war closed. He had the money on hand and exhibited it. Some of the bills might be the bills he received, but others were not. He used it and loaned it, and it was paid back to him in the bills exhibited, or it got into them in the transactions of business; and he had it on hand when the war closed. In the division of the negroes of his grandmother's estate, the two he received as trustee were, by the appraisement, worth something over $200 more than those Weaver got for his wife; and to equalize the shares, he was required to give Weaver his note for the difference. When he received the money from the executors, he offered it to Weaver to pay the note, but Weaver would not take it. After the war, Weaver demanded payment, and they agreed on a compromise, by which he paid Weaver $116 in full February

22, 1867. After Mrs. Whittle's death, her husband paid him $108, which he paid to himself as part of the money he paid Weaver; and that left the trust estate indebted to him. At the time he received the Confederate money, it was the currency of the country, and prudent business men received and accepted it. He received it and took the same care of it he did with his own money, and did not buy any land or property with it. He did not know what it was worth in gold at the time he received it.

Three other witnesses testified, for defendant, that Confederate money and State bills were the currency of the country in 1862–3–4, and cautious, prudent men received it. One of them testified that he was executor, received it and paid it out, and everybody else did so.

The court submitted certain issues of fact to the jury, which, with their answers thereto, are as follows:

(1) What amount of money did defendant receive as trustee for Mrs. Whittle? Answer—$1,747.37.

(2) If he received any amount as trustee, was the same in Confederate money? what was its value in gold when he received it? Answer—April 19, 1862, received $200, value seventy-five cents per dollar; January 1, 1863, received $1,162.60, value $3 per $1; April 5, 1862, received $84.77, value seventy-five cents per dollar; July 20, 1864, received $300, value $5 per $100.

(3) What did he do with the money he received as trustee; did he use it as his own, or did he keep it separate from and unmixed with his own? Answer—Used it as his own.

(4) Was the very money received by the defendant lost by him by the result of the war? Answer—It was not.

(5) Was the estate of Sarah Whittle indebted to de-

fendant for any sum that he had paid after the war; and if so, how much? Answer—$116.

(6) Are the Confederate bills presented in court and offered here in settlement the same bills received by him as trustee? Answer—They are not.

(7) Did defendant pay out any money for or to the estate of his *cestui que trust?* If so, how much? Answer—Paid taxes, and Weaver $116.

(8) Did defendant loan out the money of the trust estate? If so, is the money on hand and here offered in settlement the money received back in payment of such loan? Answer—It is not.

The defendant moved for a new trial on the following grounds?

(1)–(4) Because the verdict was contrary to law and evidence.

(5)–(6) Because of error in submitting the 4th and 6th issues of fact to the jury.

(7)–(9) Because the issues submitted did not properly submit the case, did not cover the case made by the pleadings, and excluded from the jury whether defendant received the Confederate money when prudent business men received it, in good faith, and used it as a prudent, cautious business man, and if it was lost by the result of the war without his fault.

(10) That the issues submitted were sifting questions, and tended to confuse the jury, and were not broad questions, and did not put the main issues before the jury.

(11) Because of error in the following charge: Was the very money received by defendant lost by him by the result of the war—the very money he received as trustee? Was it lost by him as the result of the war? If it was so lost,—the very bills—the very money,—answer that it was lost by the result of the

war. If you find that the very bills were not lost, then say they were not lost by the result of the war.

(12) Because of error in the following charge: Are the Confederate bills presented in court and offered here in settlement the same bills received by him as trustee? If you find that they are, so answer; if you find that they are different bills, answer that they are not the same.

This motion was overruled, and defendant excepted. No decree having been rendered, after the motion for a new trial was overruled, the defendant moved the court to enter up a decree to the effect that it appeared that the defendant received the estate in Confederate currency; that he used it as his own and as a prudent business man, and it was lost by the result of the war; and that it was therefore decreed that defendant was not liable for the estate so received by him, etc. This motion was overruled, and defendant excepted. The court then rendered a decree in favor of complainant for one-eighth of the sum found by the jury, reduced to a gold value, with interest, less credits for $116 paid by the trustee after the war, with interest on same since the war, and credit of $23.58 for taxes; to which decree defendant excepted.

J. E. CHAPMAN and C. J. THORNTON, for plaintiff in error.

HATCHER & PEABODY, by brief, *contra.*

BLECKLEY, Chief Justice.

1. We discover no error committed by the court in shaping questions and submitting them to the jury. There was no infringement upon any doctrine of sound practice enunciated in *Coleman vs. Slade,* 75 *Ga.* 61;

*Ruffin vs. Paris, Id.* 653 ; *The Mayor vs. Harris, Id.* 761, or *Creech vs. Richards,* 76 *Ga.* 36. It seems to us also, that the range of the questions was wide enough to comprehend all the essential elements of the case. If, however, counsel for the defendant below had thought otherwise, it was his province to suggest to the court in due time such appropriate questions as he conceived were by the court omitted. It is not a commendable practice to come forward on a motion for a new trial with a list of questions which ought to have been suggested when the trial was in progress, or at the conclusion of the judge's charge to the jury.

2. The controlling question in the case is, as to the liability of the trustee for the value of the confederate money received by him, though the money may have been lost by the results of the war. For the doctrine that a trustee could receive and use Confederate money as prudent persons dealt with their own, we are referred to *Campbell vs. Miller,* 38 *Ga.* 304 ; *Miller vs. Gould, Id.* 465 ; *Westbrook vs. Davis,* 48 *Ga.* 473 ; *Saxon vs. Sheppard,* 54 *Ga.* 286 ; *Nelms vs. Summers, Id.* 605 ; and we have examined also *Venable vs. Cody,* 68 *Ga.* 171. The doctrine of these cases we recognize as sound and correct, but they are no authority for relieving a trustee who has mixed trust money with his own and used the same as his own. The case of *Mc Whorter vs. Tarpley,* 54 *Ga.* 291, furnishes the correct rule on this subject. The court below comprehended the spirit of that case and administered it properly to the circumstances of the present case. The trustee, by making the Confederate money received by him his own, and not keeping it or loaning it in a way to identify that money or its proceeds, cannot discharge himself by producing a sufficient amount of Confederate money which he may have happened to have had on hand at the conclusion

of the war, and may have been pleased then to consider as representing the trust fund. For aught that appears, the identical Confederate money belonging to the trust may have been expended by the trustee for paying the expenses of himself and family, or for any other object, and not one cent of the same may have gone to produce the Confederate money which he happened to have when the war closed.

3. If the jury committed any error, it was in stating the amount received April 5, 1862 as $84.77, instead of $284.77, and in finding that $300 was received July 20th, 1864 ; but the result was in favor of the trustee and not against him ; for the value of the $300 was only $15, whereas the value of the $200 omitted would be $150. This result is not complained of by the other party, and certainly the trustee has no cause to complain of it.

4. The decree is excepted to, and we think it is erroneous in allowing interest previous to the death of the tenant for life, which it seems took place May 10th, 1882. The interest accruing upon the fund up to that time was her property, not that of the remaindermen. We direct that the decree be modified so as to eliminate all interest accruing prior to May 10th, 1882.

5. We direct also that no allowance be made to the trustee for the payment of taxes, inasmuch as the taxes were chargeable to the tenant for life. *Austell vs. Swann,* 74 *Ga.* 278. Had any taxes been paid on the *corpus* by the trustee since the death of the tenant for life, such payment would have been proper matter of allowance ; but we do not understand that any such have been paid, his position being that the trust fund was wholly lost. To pay taxes as trustee would be inconsistent with this position.

Judgment affirmed, with direction to modify the decree.