BAKER *et al. v.* THE CITY NATIONAL BANK OF GRIFFIN.

1. Properly construed, the petition in this case is not a proceeding to enforce the lien of the mortgage, but, as to the resident defendant, is an action to recover a general judgment against him on the mortgage debt, and, as to one of the non-resident defendants, to recover a like judgment against him founded upon his alleged promise made to the mortgagor to pay that debt. As to the other non-resident defendant, its object is to attack his title to the goods as being only colorable as between himself and the first non-resident defendant mentioned, and to deprive him of possession and control pending the controversy.

2. One who, upon the purchase of mortgaged property, contracts with the mortgagor to pay the mortgage debt, the mortgagee not being a party to the agreement, cannot be treated by the mortgagee as a joint promissor with the mortgagor so as to render both of them subject to suit in the same action, legal or equitable, in the county of the mortgagor's residence, the purchaser being a resident of another county.

3. Even treating the suit as well brought as against all the defendants, there being no allegation of insolvency as to the two defendants residing in another county, or either of them, and the proof being that they are both in fact solvent, there would be no just cause for appointing a receiver or for enjoining the sale by them of the mortgaged goods, the greater part of the assets to which the mortgage applies, if not all of them, being necessary to pay partnership debts, and these debts being superior to and having priority over the lien of the mortgage, which lien is restricted to the interest of the mortgagor in the residue of the assets after the payment of all liabilities of the partnership.

June 11, 1894.

Petition for injunction, etc. Before Judge HUNT. Spalding county. March 8, 1894.

The petition of the bank was brought on February 16, 1894, to Spalding superior court. It is alleged: For several years Shelton & Baker, a firm composed of Shelton of Spalding county and Baker of Bartow county, have been merchandising in Griffin, the business being under the immediate control of Shelton. On January 2, 1894, Shelton made and delivered to A. J. Burr a mortgage on his half-interest in the stock of goods, iron safe and show-cases, to secure four notes for $110 each, due the first of April, June, August and November, 1894. Burr transferred the mortgage and notes to the bank, and the mortgage was duly recorded. February 8, 1894, Baker came to Griffin, and negotiations were begun for a sale by Shelton to Baker. Shelton at once notified Baker that he had given said mortgage, to which act Baker made no objection, but said if he bought him out that would be the first debt to be paid. Immediately afterwards Shelton transferred to Baker

all Shelton's interest in said stock and business, in consideration that Baker would pay the mortgage and notes and all other liabilities. In pursuance of this trade Baker took control of the stock, through his agent Turner, and now claims to have sold the stock to Turner, who is now in possession thereof. In the transfer between Shelton and Baker there was no consideration other than that named above. The stock invoiced over $4,400, and the firm liabilities were about $2,800. Shelton assured the bank that Baker would pay the mortgage, both while the sale was pending and after it was made. Baker has now notified the bank that he declines to pay it, and repudiates the contract made with Shelton. Turner is still in possession, is rapidly disposing of the stock, and will dispose of it entirely or take it to Cartersville. The mortgage is not due and the bank cannot foreclose it, and believes all the parties to the transaction are about to move from the county. Turner was a clerk for Baker, and has no means; Shelton is insolvent; and the bank has no means of learning Baker's financial standing. It prays for an injunction, receiver, judgment against Shelton and Baker for the full amount due it, and for process.

Shelton answered: Baker came to Griffin about January 31, 1894, and after looking into the business, opened negotiations to buy him out. He then told Baker he had given the mortgage on his half-interest for $440, and that it was held by the bank; and Baker replied that the mortgage would be the first debt paid. Finally the following agreement was made: Shelton was to transfer his interest to Baker, and Baker was to pay off the mortgage and then pay all the firm debts. An inventory of the stock was taken, and it invoiced over $4,400. The liabilities were about $2,800. This was the only consideration of the transfer; and if Baker declines to carry out his agreement, the consideration

has failed and the transfer is void; and Shelton asks that it be decreed void, and that the court either appoint a receiver and wind up the business for the benefit of the creditors, or that the stock etc. be turned back to Shelton and Baker to be held as they were before the transfer. He believes that Turner knew the terms of said trade, and knew that Baker was to pay the bank and other debts.

Baker and Turner pleaded to the jurisdiction, on the ground of their residence in Bartow county. Further, that they are not joint or several obligors with Shelton to plaintiff, and in no way legally bound for the debt; and that there is a misjoinder of each of them, in order to try to give the superior court of Spalding county jurisdiction of them. They made answers the nature and contents of which will sufficiently appear from the statement of the evidence.

For the plaintiff there was an affidavit of Shelton and wife, setting forth substantially the facts recited in Shelton's answer. Shelton further swore that Turner told him that Baker said he had promised to pay the bank's mortgage, had assumed the payment of it and had arranged it, so it would not bother him in his work in Griffin. By other witnesses it was proved that Baker stated he would have the mortgage to pay; that the stock of goods invoiced about $4,100 without the fixtures; and that Turner had stated that, before he bought the stock, Baker told him of the bank's mortgage, and said it would not interfere with Turner in his purchase, and when it was presented, for Turner to notify Baker and he would take care of it or protect it, or words to that effect. Turner also stated, when informed of the mortgage after his arrival in Griffin, that he was aware of it, that Baker would attend to all that, that he (Turner) understood the bank would be protected, and that Baker was to pay all the debts. He afterwards said, in

response to a request to indorse the bank's notes, that the bank would be paid, and that if Baker said so, he (Turner) would indorse the notes, but that as fast as the money came in they would be paid. The bank was satisfied with this until it received from Baker's attorney a letter declining to pay the debt, etc. It was admitted that A. J. Burr furnished no money on the notes and mortgage, but carried them to the bank and discounted them for Shelton.

For defendants the following appeared : On November 1, 1892, Shelton and Baker, while citizens of Bartow county, entered into a partnership agreement to engage in a jewelry business in Griffin, under which each was to furnish an equal amount not over $1,000. Shelton was to conduct the business and receive $600 a year out of the undivided profits, the remaining profits to be equally divided. Baker furnished $932.81, and Shelton represented to Baker that he furnished $733.37. He conducted the business until January 31, 1894, when it was dissolved by mutual consent, Shelton conveying all his interest to Baker by warranty deed which is silent as to the existence of any mortgage to the bank. It recites that Shelton is indebted to Baker, and conveys "for value received." Up to a short time before the dissolution Baker confided in Shelton's integrity and did not scrutinize the business, Shelton assuring him that it was in good shape and making money. About January 27, 1894, he wrote to Baker to come to Griffin. He went on January 29, had a conference with Shelton and a cursory examination of the books, and offered to convey all his interest to Shelton if Shelton would pay the partnership debts or give him good security against them. In answer to a question from Baker as to how and whence he got the $400 he said he had paid his kinsman on a debt, Shelton stated he got the money from the City National Bank, and had given a mortgage

on his half-interest in the business to secure its payment. Baker did not then and never has ratified this act. Shelton subsequently informed Baker that he could not get the money to meet Baker's offer to sell as just stated, and advised that the best thing to do was to make an assignment. On January 30, Baker was advised by his attorney that the partnership debts would have to be paid before any of the partnership assets could be applied to individual debts of a partner, and that as Shelton was insolvent and the partnership probably so, Baker could have all the assets applied to the partnership debts to the exclusion of the mortgage. On the next day Baker asked Shelton if he was willing to turn over the whole business to him, as he was bound for the partnership debts and would have to pay them, as none of them could be made out of Shelton. To this Shelton replied he was willing, and the deed was made. No one was present but Shelton and Baker. In no way did Baker agree to become responsible for the mortgage debt, nor did he authorize Shelton so to represent. He took the deed in good faith, and intended to convert the assets into money as quickly as he could, and apply the proceds to the partnership debts. On February 2, he sold them all to Turner, conveying them by warranty deed and taking from Turner a mortgage to secure the purchase money; which sale was in good faith, to convert the assets into money so as to pay the partnership debts as far as possible. The partnership liabilities amount to $3,756.70, and the assets will not be enough to pay them, entailing on Baker the loss of the money he put into the business and several hundred dollars besides. The inventory of assets was: merchandise, $2,590.25; store furniture, $362.35; notes solvent and insolvent, $541.45; accounts solvent and insolvent, $918.80; aggregate, $4,412.83. All the assets are not worth over $3,000, and Turner offers to take that for

them, and Baker offers to transfer his mortgage to the purchaser on payment to Turner of that sum. They will probably bring little over $2,700. Turner denied making the statements imputed to him in plaintiff's evidence, except he may have said he would indorse the bank's notes if Baker said for him to do it, as it did not matter to him to whom he paid the purchase money so he got credit for it on his debt to Baker. He was told of the mortgage at the time Baker sold to him, with the statement that Baker would protect his warranty deed. The books of the firm kept by Shelton showed that he had not charged himself with $38.75 of firm money used by him, had taken credit twice for the same debt of $32.30, and had entered on the cash book as "shortage" sums amounting to $316.98. Turner and Baker both are solvent. Baker is amply so; and Turner is in the retail grocery business at Cartersville, has always paid every debt he owed, and can still do so. Both are residents of Bartow county. Baker did ask Turner to try to get Shelton to leave Griffin, as he feared some of the firm creditors might try to put them into the hands of a receiver there.

The judge ordered that injunction be granted and receiver appointed as prayed, provided that this order might be dissolved upon Baker giving a bond for $1,000 conditioned upon his paying the bank the amount of any judgment it might recover against him on final hearing. Defendants excepted.

J. B. CONYERS and KONTZ & CONYERS, for plaintiffs in error. J. S. BOYNTON and R. T. DANIEL, contra.

LUMPKIN, Justice.

1. The material facts are stated by the reporter. Properly construed, the petition filed by the City National Bank was not really a proceeding to enforce the lien of the mortgage which had been executed and de-

livered by Shelton to Burr, and by the latter assigned to the bank.  The only prayer for substantial relief against Shelton, the only defendant residing in Spalding county, was to recover a general judgment against him on the notes given by him to Burr,.and which Burr had assigned to the bank along with the mortgage.  As to Baker, another defendant, who resided in Bartow county, the petition should be treated as neither more nor less than an action against him founded upon his alleged promise to pay to the bank the debt of Shelton secured by the mortgage.  As to Turner, the other non-resident defendant, the object of the petition was simply to attack the title to the goods which he claimed to have derived by purchase from Baker, as being only colorable and not real, and therefore to have him dealt with by the court as a mere nominal owner of the goods, and consequently, deprived of the possession and control of them pending the litigation.  The above, we think, sets forth, in a condensed form, the real nature and character of the plaintiff's petition with respect to each of the several defendants.

2. Even if Baker did purchase from Shelton the interest of the latter in the stock of goods, as alleged in the petition; and if, as a part of the consideration of that purchase, Baker contracted with Shelton to pay the mortgage debt of the latter held by the bank, the latter, being no party to this agreement, has no right whatever to treat Baker as a joint promissor with Shelton so as to render both of them subject to suit in the same action, either legal or equitable, in Spalding county, Baker being a resident of Bartow, as already stated.

3. Even if the action was well brought as against all the defendants, no just cause for appointing a receiver or for enjoining the sale of the mortgaged goods by Baker or Turner appeared.  There was no allegation of insolvency as to either of them; but on the contrary, the

proof showed they were both solvent. Consequently, it was not necessary for the court to take possession of the stock of goods for the purpose of making available to the bank any judgment it might recover against these non-resident defendants. Besides, the greater part of the assets covered by the mortgage—in fact, most probably all of them—were necessary to pay the partnership debts; and as these debts are superior to and have priority over the lien of the mortgage, which lien is restricted to the interest of Shelton in the residue of the assets of the partnership after the payment of all its liabilities, it is not in the least degree likely that the bank would realize a cent upon the mortgage after administration by a receiver. It certainly would not, if the costs and expenses of such administration proved as disastrous to the fund as is usual in the majority of receivership cases.

*Judgment reversed.*