22886. PERKINS v. FIRST NATIONAL BANK
OF ATLANTA, Administrator, et al.

ARGUED MARCH 9, 1965—DECIDED MAY 31, 1965—
REHEARING DENIED JUNE 14, 1965.

*Sams & Sams, Marion A. Sams, Augustine Sams, Edward S. Sams,* for plaintiff in error.

*J. William Gibson, Sam F. Lowe, Jr., Hansell, Post, Brandon & Dorsey, Edward F. Kern,* contra.

QUILLIAN, Justice. ■ The separate demurrers of the defendant executor Bridges and the defendant administrator bank contained the same general grounds of demurrer: that the petition as amended did not set forth a cause of action against "this defendant"; that the petition showed on its face that the plaintiff was guilty of laches and thus barred from proceeding against "this defendant."

The usual test of the sufficiency of a petition to withstand a general demurrer is that it alleges the plaintiff's right to some relief prayed. *Roughton v. Thiele Kaolin Co.,* 209 Ga. 577, 579 (74 SE2d 844). However, where there is more than one defendant interposing a general demurrer to the petition, the demurrer may, as here, not challenge the sufficiency of the petition as to all defendants but merely raise the question as to whether it set forth a cause of action against the demurrant. Hence, the sufficiency of the petition as amended in the present case to meet the demurrers of both defendants depends upon whether it set forth a cause of action to which each is a necessary or proper party. *Heath v. Miller,* 197 Ga. 443 (3) (29 SE2d 416) ; *Moore v. Harrison,* 202 Ga. 814, 817 (44 SE2d 551).

■ The design of the petition was to allege the plaintiff's right to recover from Bridges, the executor of the life tenant Mrs. Frances Travis Perkins, the plaintiff's one-half remainder estate in the assets to which he succeeded as a remainderman under the will of his father, Alonza Harmon Perkins; to compel the executor to account for the property, including money received by Mrs. Perkins as life tenant; and to enjoin the executor Bridges from proceeding, as he proposes, to distribute the assets of the remainder estate as directed in the will of Mrs. Perkins, the life tenant, contrary to the will of Alonza Perkins, which created both

the life and remainder estates. For certain reasons hereinafter discussed, the plaintiff, plaintiff in error here, contends, Harmon Barton Perkins was both a proper and necessary party to the case, as is his administrator, The First National Bank of Atlanta. This contention will be presently discussed with other matters determinative of whether the petition sets forth a cause for the relief sought.

The petition shows that on September 17, 1936, the plaintiff's father Alonza Perkins died testate possessed of an estate consisting of real and personal property including money. The will of Alonza Perkins bequeathed and devised the assets of his estate to Frances Travis Perkins for her life with remainder over to the plaintiff, Travis Thrasher Perkins, and to Harmon Perkins, in equal shares upon her death. Mrs. Perkins qualified as administratrix cum testamento annexo of Alonza Perkins' estate. Thereupon, she and Harmon Perkins entered into a conspiracy to deprive the plaintiff of his part of the remainder estate and to eventually channel all the property and money passing under the will of Alonza Perkins into the possession of Harmon Perkins. The petition relates that in pursuance of this conspiracy and in the execution of the scheme Mrs. Perkins, as administratrix cum testamento annexo, and as life tenant committed certain fraudulent acts. It is alleged that in her application for administration Mrs. Perkins fraudulently represented to the court of ordinary that the estate consisted of real and personal property of the probable value of $1,000, whereas in fact the estate was of a value in excess of $20,000; that this fact was well known to Mrs. Perkins and to Harmon Perkins.

The petition further showed that Mrs. Perkins as administratrix and life tenant attempted to consummate the conspiracy to defraud the plaintiff of his share in the remainder estate, and in furtherance of the fraudulent scheme entered into between her and Harmon Perkins intentionally commingled and confused her own funds with those that constituted the part of the life estate title to which would, upon her death, vest in the plaintiff and Harmon Perkins in equal shares.

It is further alleged that Mrs. Perkins executed a will in which she treated the property and money composing the life estate as her own individual estate and directed the distribution of such

property and money contrary to the provisions of the will of Alonza Perkins, the creator of both estates. The will of Mrs. Perkins, attached to the petition as an exhibit, showed Harmon Perkins was the chief beneficiary and the bulk of the property and money was devised and bequeathed to him. The petition further alleged that the executor of the estate of Mrs. Perkins, unless restrained and enjoined, will proceed to administer her estate and dispose of the assets thereof, which assets are lawfully a part of the estate of Alonza Perkins, all to the irreparable loss and damage of the plaintiff.

■ The plaintiff's entire case is based upon his alleged title and right of possession to the share he claims in the remainder estate. The creation of the remainder estate clearly appeared from the averments of the petition that it was devised and bequeathed to the plaintiff and Harmon Barton Perkins in equal shares. Mrs. Perkins as administratrix cum testamento annexo of the estate of Alonza Perkins had the authority to assent to the grant of a life estate to herself. *Martin v. Walker,* 94 Ga. 477 (21 SE 223). Such assent inured to the benefit of the remaindermen and upon the expiration of the life estate served to vest the remainder estate in the plaintiff and his brother Harmon Perkins in equal shares as provided by the will of Alonza Perkins. *Watkins v. Gilmore,* 121 Ga. 488 (4) (49 SE 598); *Miller v. Harris County,* 186 Ga. 648 (1) (198 SE 673). This court held in *Matson v. Crowe,* 193 Ga. 578, 581 (19 SE2d 288): "An assent to the devise to a life tenant inures to the benefit of the remaindermen. . . The assent of the executor to a devise of lands perfects the inchoate title of the devisee. *Peoples Nat. Bank of Shelbyville v. Cleveland,* 117 Ga. 908 (6) (44 SE 20). By assenting to the devise the executrix loses all control and interest in the land. It is no longer a part of the estate. The order of the ordinary could not give any title to the estate thereto."

*Code* § 85-709 provides: "The assent of the executor to a legacy to the tenant for life inures to the benefit of the remainderman. Remaindermen, at the termination of the life estate, may take possession immediately." *Keen v. Rodgers,* 203 Ga. 578 (1) (47 SE2d 567). The principle is plain and the mandate of the statute explicit that upon the death of the life tenant the remainderman is entitled to immediate possession of the remainder estate.

It is held in *Simms v. Freiherr*, 100 Ga. 607 (28 SE 288), and *Bienvenu v. First Nat. Bank*, 193 Ga. 101 (17 SE2d 257), that a life tenant has no power to dispose of the corpus of the estate by deed or will nor has the executor of the life tenant any authority to retain or administer the assets of the remainder estate when the life estate has terminated. This court held in *Keen v. Rodgers*, 203 Ga. 578 (2), supra: "A tenant in common need not join his co-tenant, but may sue separately for his interest, and the judgment in such case shall affect only himself." *Code* § 3-111.

As held in *Brundage v. Bivens*, 105 Ga. 805, 807 (32 SE 133): "Nor can it be said that the defendants in any other manner met the prima facie case made out by the plaintiffs. So far as was shown, John T. Bivens had no interest whatever in the land in controversy save that which he acquired under the will from Stephen Bivens, which was a mere life estate. No greater interest could, therefore, pass into the 'Stubbs boys,' to whom John T. Bivens sold, or be conveyed by them to Roberts, so as to descend to his heirs. In other words, the defendants appear to stand in the shoes of the life-tenant, claiming adversely to the plaintiffs under a common grantor. If so, the fact that the life-estate no longer exists would conclusively show the right of the remaindermen to enter."

We conclude the petition sufficiently set forth the plaintiff's right to recover his share of the remainder estate from the executor Bridges.

■ Ancillary to the plaintiff's cause for the recovery of his share of the remainder estate and necessary to its enforcement is his right to call the executor Bridges to account for the assets of the remainder estate that he retains and proposes to distribute as directed in the will of his testatrix Mrs. Perkins. Familiar and well established is the principle relative to this right. A succinct statement of the principle is found in *Keen v. Rodgers*, 203 Ga. 578 (3), supra: "An action in the nature of an accounting lies to recover personal property limited over by way of remainder." This follows the well considered case of *Bienvenu v. First Nat. Bank*, 193 Ga. 101 (2), supra. A similar pronouncement of the same principle is found in *Simms v. Freiherr*, 100 Ga. 607, supra.

The life tenant having sustained a fiduciary relationship to

the plaintiff, a remainderman (*Bienvenu v. First Nat. Bank,* 193 Ga. 101, 106, supra), and the subject matter of the accounting being shown to be complicated because of the life tenant confusing and commingling her own funds with the money which upon her death became part of the remainder estate, the accounting, properly granted, is an equitable accounting.

In a well considered and splendidly worded opinion of Justice Warren Grice, this court held in *Matson v. Crowe,* 193 Ga. 578, 585, supra: "The Code, § 37-301, declares that 'equity has jurisdiction over matters of account, . . . where [the] accounts are complicated and intricate, or . . . between . . . tenants in common, or where a multiplicity of suits would render a trial difficult, expensive, and unsatisfactory at law.' The complainants and the defendant are in effect alleged to be tenants in common."

"Where under the terms of a will the executor assents to a devise and delivers the property to the life tenant the title passes out of the estate, and where at the death of the life tenant an administrator is appointed and seeks to sell the property and distribute the proceeds, such an administration is void for lack of jurisdiction in the court of ordinary; and, accordingly, in a suit by the remaindermen for equitable partition, the trial court erred in directing a verdict for the defendants." *Pope v. Stanley,* 202 Ga. 180 (2) (42 SE2d 488).

■ The petition showed that an injunction was necessary and should have been granted to prevent the executor Bridges from distributing the assets of the remainder estate as directed in the will of Mrs. Perkins for several reasons. First, according to the petition such a distribution would have the effect of consummating the fraudulent scheme of Mrs. Perkins and Harmon Perkins to deprive the plaintiff of his fair share of the remainder estate and effectively channel the bulk of the assets of the same into the possession of Harmon Perkins. Equity abhors fraud, of which conspiracy is the handmaid, and will extend its aid to prevent the accomplishment of a fraudulent design.

The proposed distribution would be in the nature of a fraudulent conveyance. A case similar in fact and parallel in principle with the case made for injunction in the present case is *Latham v. Fowler,* 192 Ga. 686 (16 SE2d 591). There the grantor of a

life estate with remainder over to the plaintiffs entered into a scheme with the life tenant to make to the latter a second deed, in lieu of the first, in which absolute title was conveyed to the exclusion of the remaindermen. The life tenant died and the remaindermen obtained an injunction to restrain his wife and children, to whom the land, subject to the remainder estate, was set aside as a year's support, from conveying the same to a third person. The petition in the present case alleged Harmon Perkins was insolvent, as is necessary to obtain injunction against a fraudulent conveyance. *Mills v. Webb,* 89 Ga. 734 (15 SE 635) ; *Baker v. City Nat. Bank,* 94 Ga. 87 (3) (21 SE 159).

■ The demurrers of both defendants made the broadside attack on the petition that all of the causes therein set forth are barred under the equitable doctrine of laches. In the case of *Young v. Wilson,* 183 Ga. 59, 71 (187 SE 44), it is held: "One ground of the demurrer was addressed to the petition as a whole, because as to the demurrants the alleged causes of action were barred by the statute of limitations. In another ground, which in like manner assailed the petition in its entirety, it was contended that the claims asserted by the plaintiff as against the demurrants were barred by laches. The petition did not show upon its face that it was barred, either by the statute of limitations or by laches, as to all of the relief sought; and for this reason alone, if not for others, the court did not err in overruling these grounds. *Greer v. Jackson,* 146 Ga. 376 (91 SE 417) ; *Blaylock v. Hackel,* 164 Ga. 257 (138 SE 333) ; *Sikes v. Hurt,* 18 Ga. App. 197 (2) (89 SE 181)."

*Code* § 3-712 provides: "courts of equity may interpose an equitable bar, whenever, from the lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights." See also *Code* § 37-119.

The plaintiff's right to recover his share of the remainder estate was, of course, a plain statutory right not subject to the bar of laches. *Redding v. Anderson,* 144 Ga. 100 (4) (86 SE 241) ; *Fox v. Lofton,* 185 Ga. 456 (195 SE 573) ; *Wright v. Conner,* 200 Ga. 413, 414 (3a) (37 SE2d 353). However, the plaintiff's cause, if equitable in nature, would be free of the taint of laches. It did not ripen until the life tenant died in 1958, *McCook v. Harp,* 81 Ga. 229 (4) (7 SE 174), *Gurr v. Gurr,* 198 Ga. 493 (2)

(32 SE2d 507), *Gaines v. Johnson*, 216 Ga. 668 (1) (119 SE2d 28), and suit was brought in 1960. As stated in *Gurr v. Gurr*, 198 Ga. 493 (2), supra: "The other complainants, being remaindermen the enjoyment of whose rights were in abeyance so long as . . . the life tenant was in life, showed no present interest in the subject matter of the suit, and were not entitled to call on the tenant in possession for an accounting, nor for any of the other relief sought."

See also *Brundage v. Bivens*, 105 Ga. 805, 807, supra, which held: "So long as John T. Bivens [a life tenant] remained in life, no action for the recovery of the land could have been maintained by the plaintiffs. [Citing cases] 'The life-tenant being entitled to the possession of the property, no suit could be maintained therefor by the remaindermen, and no possession thereof could become adverse, so as to ripen into a prescriptive title as against the remaindermen, so long as the life-tenant lived.' *Bull v. Walker*, 71 Ga. 196."

\ ■ The defendants insist the first judgment sustaining their respective general demurrer and motion to strike in the nature of a general demurrer was final and when no exception was taken and no amendment materially strengthening the petition was allowed the judgment was a final adjudication and became the law of the case that the petition set forth no cause of action. The judgment, after providing that the demurrer and motion to dismiss were sustained and the petition was dismissed as to the administrator bank and the executor Bridges, contained the further modifying provision: "However, plaintiff is given 20 days leave to amend."

Thus, it clearly appears that the judgment was not a final judgment conclusively determining the insufficiency of the petition to set forth a cause of action. When a petition is dismissed it is then out of court and there is nothing left to amend by. Thus, it is impossible to couch an order or judgment in such language as to have the effect of presently dismissing the petition and at the same time retaining it in court to be amended. "The court could not sustain the demurrer to the original petition and dismiss it, and at the same time allow an amendment to it, subject to future demurrer and answer." *Steed v. Savage*, 121 Ga. 84, 86 (48 SE 689). Had no amendment been offered within

the time allowed in the amendment to cure the deficiency of the petition the order would have become final when the time allowed to amend expired.

This court held in the full-bench case of *Folsom v. Howell*, 94 Ga. 112 (1) (21 SE 136): "A demurrer to a petition as amended opens the merits of the whole pleading to a fresh adjudication, and a conditional order of dismissal made on the hearing of a previous demurrer to the original petition concludes nothing. Thus, where a petition was heard on a demurrer thereto, and the presiding judge passed an order, not dismissing the petition, but declaring that it would be dismissed unless amended within a given time so as to make it good in law, this judgment was not final upon the merits, but the whole petition was open for amendment within the time limited, and another demurrer afterwards filed to the petition as amended should have been overruled if the petition as a whole set forth a cause of action, whether the matter contained in the amendment aided it or not."

This case has never been overruled. However, if the converse view should be entertained, it appears that when the amendment to the petition was offered neither defendant moved that it be disallowed or stricken, but both renewed their original motion and demurrer to the petition as amended and further demurred to the petition as amended. This constituted a waiver of the right to insist that the original judgment finally disposed of the case because in such renewed motion and demurrer to the petition as amended and demurrers to the petition and its amendment as a unit, the defendants recognized the original judgment sustaining their respective motion and demurrer was not final and did not dismiss the petition. See *Benion v. Life & Cas. Ins. Co.*, 84 Ga. App. 509 (2) (66 SE2d 75).

Furthermore, we do not agree with the defendants that the amendment did not materially strengthen the petition. The principal reasons urged by the defendants in insisting that the petition did not set out a cause of action were: (1) that the plaintiff's entire case was barred under the equitable doctrine of laches because the plaintiff had long delayed in complaining of the conduct of Mrs. Perkins in mismanaging the estate of Alonza Perkins, and both as administratrix and life tenant concealed its assets and commingled the money received as administratrix and

life tenant with her own funds; (2) that the petition contained no prayer for an accounting.

The amendment to the petition alleged that the plaintiff did not know of any of these fraudulent acts on the part of Mrs. Perkins until her death; that he exercised ordinary diligence in reference to these matters by inquiring of her what was being done with the property left by his father and that she from time to time gave him this assurance: "that the estate was in good condition, that the estate was building up and money in the bank was increasing and that the estate was in fact making money and that upon her death there would be increased assets in the estate for both petitioner and his brother, Harmon."

The amendment further alleged that Mrs. Perkins was the plaintiff's mother; that he loved his mother and reposed complete confidence in her. A mother and son bear the closest relation to each other. Moreover, as administratrix cum testamento annexo she bore such relation to the plaintiff as a beneficiary under his father's will as to require full disclosure as to the affairs of the estate. As a life tenant she stood in a fiduciary relation to him, a remainderman. The pronouncement of this principle is found in *Bienvenu v. First Nat. Bank,* 193 Ga. 101, 106, supra.

Usually a party is required to exercise ordinary diligence to discover fraudulent conduct of the opposite party. However, "where a person sustains towards others a relation of trust and confidence, his silence when he should speak, or his failure to disclose what he ought to disclose, is as much a fraud in law as an actual affirmative false representation." *Brown v. Brown,* 209 Ga. 620 (6) (75 SE2d 13).

"The rule that, in cases of fraud, the statute of limitations begins to run only from the time of the discovery of the fraud, will not apply where the party affected by the fraud might, with ordinary diligence, have discovered it. But the failure to use such diligence may be excused where there exists some relation of trust and confidence, as principal and agent, . . . between the party committing the fraud and the party who is affected by it, rendering it the duty of the former to disclose to the latter the true state of the transaction, and where it appears that it was through confidence in the acts of the party who committed the

fraud that the other was prevented from discovering it." *Kirkley v. Sharp*, 98 Ga. 484, 489 (25 SE 562). Similar authorities are *American Nat. Bank v. Fidelity &c. Co.*, 131 Ga. 854, 860 (63 SE 622, 21 LRA (NS) 962); *Morris v. Johnstone*, 172 Ga. 598, 605 (158 SE 308); *Larkins v. Boyd*, 205 Ga. 69, 72 (52 SE2d 307).

In this situation it was at least a question for the jury as to whether the plaintiff could, without making further inquiry, accept as true the reports and assurances given him by his mother. So the amendment dispelled any doubt as to the plaintiff's rights being free from the taint of laches.

The amendment also added the prayer that Bridges, executor of the estate of Mrs. Perkins, be compelled to account for the assets of the remainder estate. The amendment in supplying these alleged deficiencies met the attacks of the general demurrers on the petition as amended.

■ According to the petition in the present case, Harmon Perkins was a necessary party to the suit. This is true because the petition alleges that he and Mrs. Perkins were conspirators in seeking to withhold the plaintiff's share in the remainder estate to which he was entitled under the will of Alonza Perkins and to channel his rightful share of the estate into the possession and ownership of Harmon Perkins. All parties to a conspiracy to defraud are properly named parties to a suit brought to expose and defeat the fraudulent design of the conspiracy. In *Kruger v. Walker*, 111 Ga. 383 (2) (36 SE 794), it was held: "The person with whom the debtor defendant made the alleged fraudulent conspiracy is a proper party defendant to such an action." *Peoples Loan Co. v. Allen*, 199 Ga. 537 (34 SE2d 811), contains a clear pronouncement of the principle. See *Adams v. Bishop*, 174 Ga. 420 (1) (163 SE 148).

It also appears that under authority of *Latham v. Fowler*, 192 Ga. 686, supra, cited in the fifth division of this opinion the plaintiff was entitled to an injunction to restrain Bridges, the executor of the estate of Mrs. Perkins, from distributing the assets of the remainder estate as the individual estate of the life tenant and as directed in her will.

It appears that Harmon Perkins was the chief beneficiary of Mrs. Perkins' will and had a material interest in the property

alleged to be assets of the remainder estate distributed according to the directions given in her will. "Generally all persons interested in the litigation should be parties to proceedings for equitable relief." *Waters v. Waters*, 167 Ga. 389 (3) (145 SE 460). *Bryan v. Bryan*, 170 Ga. 472 (3) (153 SE 188); *Gormley v. Wilson*, 176 Ga. 711 (1) (168 SE 568).

■ The bill of exceptions, among other things, excepts to the judgment sustaining the general demurrer that attacked the petition because it failed to set forth a cause of action for recovery of damages, because of Mrs. Perkins' mismanagement of the estate of Alonza Perkins and for breach of the bond given by her as administratrix cum testamento annexo. This petition merely recited the acts of fraud and mismanagement of the estate of Alonza Perkins on the part of Mrs. Perkins, including the fact that she gave an administrator's bond in the sum of $1,000 when the value of the estate was $20,000, as illustrative of the alleged conspiracy between Mrs. Perkins and Harmon Perkins to conceal the assets of the estate of Alonza Perkins, confuse them with the personal assets of Mrs. Perkins and eventually channel them through Mrs. Perkins' will into the possession of Harmon Perkins, so as to wrongfully deprive the plaintiff of his share of the remainder estate devised and bequeathed to him in the will of Alonza Perkins. There was no attempt to sue on the bond, none of its provisions being set out in the petition, nor for damages caused by the conduct of Mrs. Perkins, there being in the petition no allegation of a right to recover damages and no prayer for damages.

The sustaining of the demurrers on these grounds was harmless error.

*Judgment reversed. All the Justices concur.*