## S97A1101. MARSHALL v. MARSHALL et al.
(492 SE2d 188)

</div>

BENHAM, Chief Justice.

Appellant Steven Marshall and his two siblings are the remainder beneficiaries of a life estate created by their mother's will. The holder of the life estate interest was W. Edwin Marshall, the father of the three remainder beneficiaries and the husband of the testatrix. Upon the death of the life tenant, Steven filed suit against the estate of his father, seeking an equitable accounting of the assets of the life estate. The trial court granted summary judgment to appellees, the executors of Edwin Marshall's estate, who are also appellant's sib-

---

[3] 254 Ga. 508, 511 (330 SE2d 353) (1985).
[4] *Todd v. State,* 261 Ga. 766, 767 (410 SE2d 725) (1991).

lings and fellow remainder beneficiaries of the life estate. This appeal followed.

Under the terms of the testatrix's will, the holder of the life estate was given the power to sell the assets of the life estate upon such terms as he deemed best, and to invest and reinvest the proceeds derived from such sales in such manner and upon such terms as he deemed best. The will required the life tenant to keep and maintain accurate records and separate accounts if assets were sold to avoid intermingling the life estate's properties and investments with the property owned by the life tenant which was not subject to the life estate and the remainder interest created by the will. The life tenant was authorized to invest the proceeds from the sale of life estate assets to purchase a home for himself or a vacation home for himself. The testatrix absolved the life tenant from liability for waste, loss, or destruction of the life estate assets or investments made by the life tenant, and further empowered the life tenant with all the powers and privileges she bestowed on trustees in other specified provisions of her will, among them being the power "to sell, exchange, or otherwise dispose of any property. . . ."

Shortly after the testatrix's death in 1978, the life tenant sold one of the assets of the life estate, a home in Atlanta. There is no evidence that he maintained contemporaneous records detailing how the proceeds of the sale were invested. Between the date of that sale and 1986, the life tenant purchased a townhouse in Atlanta, a condominium in Florida, and real estate in midtown Atlanta. In 1986, the life tenant established a trust with a corpus of $145,000 for the remainder beneficiaries by means of a trust document which stated that the corpus was the result of the life tenant's liquidation of the life estate's interest in the Atlanta townhouse and the Florida condominium, real estate that had been purchased in part with the proceeds from the 1979 sale of the life estate asset. The life tenant died in 1995 and the corpus of the trust was distributed to appellant and the other two remainder beneficiaries. The life tenant devised the Atlanta midtown realty to appellant's siblings, intentionally disinheriting appellant, who contends an accounting is necessary because the midtown realty could be part of the life estate remainder since it may have been purchased in part with the proceeds from the sale of the life estate asset.

1. It is unquestioned that the life tenant had the power to sell the assets of the life estate. In the absence of an express provision authorizing the life tenant to consume the proceeds of the authorized sale of assets, the proceeds stood in the place of the assets, subject to the life estate and remainder interests. *Caldwell v. Walraven*, 268 Ga. 444 (490 SE2d 384) (1997); *Bienvenu v. First Nat. Bank*, 193 Ga.

101 (2) (17 SE2d 257) (1941).[1] When a life tenant sells assets of the life estate and is not expressly authorized to consume the proceeds by the instrument which created the life estate and authorized the sale of the assets, the life tenant's executor may be compelled to account for the sale's proceeds. Id. See also Pindar, Georgia Real Estate Law, § 7-40 (4th ed.). Furthermore, an equitable accounting may be in order, in light of the fiduciary relationship between the life tenant and the remainder beneficiaries (*Bienvenu v. First Nat. Bank*, supra, 193 Ga. 101), when it is shown that the life tenant commingled personal funds with funds from the life estate which became part of the remainder interest upon the death of the life tenant. *Perkins v. First Nat. Bank*, 221 Ga. 82 (4) (143 SE2d 474) (1965).

2. Appellees suggest that the testatrix's immunization of the life tenant for liability for waste, i.e., any act causing permanent injury to the remainder interest (OCGA § 44-6-83), deprives appellant of a remedy for the life tenant's alleged intermingling of his personal funds with the proceeds from the sale of a life estate asset.

The creator of a life estate for the benefit of another may provide that the life tenant shall not be held liable for waste. Such a life tenant is one who holds without impeachment for waste and may not be called into a court of law during the tenant's lifetime on account of the life tenant's conduct in managing the estate; however, a court of equity may enjoin the life tenant from future acts of waste, and the life tenant who holds without impeachment may be held liable for wanton and malicious acts of waste or acts that are destructive of the inheritance. *Belt v. Simkins*, 113 Ga. 894, 896-897 (39 SE 430) (1901). See also American Law of Property, Vol. V, pp. 105-106, § 20.14 (1952). To give a life tenant absolute immunity from equitable and legal action by the remainder or reversionary beneficiary, the testatrix was required to use express language indicating that the tenant was not to be liable for equitable waste. Id. As there is no such express language in the testatrix's will, the waiver of liability for the life tenant's acts of waste only immunized the tenant of liability at law for such acts, and does not vitiate the remainder beneficiary's right to an accounting.

3. The accounting to which appellant is entitled was completed by the life tenant in 1986 when he created the trust for the remainder beneficiaries. In that document, the life tenant traced the proceeds he had received from the sale of the life estate asset, and cre-

---

[1] However, when the life tenant is given complete control and power of disposal of the property contained in the life estate and makes an inter vivos gift of a life estate asset, there are no proceeds to stand in the life estate in the place of the item given away, and the remainder beneficiaries are deprived of their interest. See *Shields v. Shields*, 264 Ga. 559 (448 SE2d 436) (1994).

ated the corpus of the trust with the proceeds.[2] In essence, appellant contends the proffered accounting is inaccurate because the proceeds of the sale of the life estate asset might have been used to purchase midtown realty rather than the realty reported by the life tenant, via the trust document, to have been purchased. Appellant presented no more to the trial court than his supposition that the life tenant had used life estate proceeds to purchase realty in midtown Atlanta. In the absence of evidence that the life estate proceeds were used to procure assets other than those the life tenant, through the trust document, reported were procured, summary judgment for the life tenant's estate was appropriate.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 14, 1997 —
RECONSIDERATION DENIED NOVEMBER 21, 1997.

*Caldwell & Watson, Harmon W. Caldwell, Jr., Wade H. Watson III,* for appellant.

*Alston & Bird, G. Conley Ingram, Leigh Ann Morrissey, James C. Grant,* for appellees.

---

[2] The trust document stated that some of the cash received from the sale of the life estate asset ($202,000) was used to pay costs of the sale, funeral and estate expenses. The remainder of the cash went into the purchase of two other homes, with the trust owning 16.72 percent of one house and 79.05 percent of the other. The values of those interests were converted into cash ($145,901) and placed in the trust, with the life tenant drawing the interest income during his lifetime.